# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

------------------------------------------------------------------------- x

NEW YORK SHIPPING ASSOCIATION, INC.,                     :
on behalf of its members; METROPOLITAN MARINE            :
MAINTENANCE CONTRACTORS' ASSOCIATION, INC.,              :
on behalf of its members; INTERNATIONAL                  :          **COMPLAINT**
LONGSHOREMEN'S ASSOCIATION, AFL-CIO, on behalf           :
of its members and affiliated locals in the Port of New York     :          Civil Action No.:
and New Jersey; LOCAL 1804-1, INTERNATIONAL              :
LONGSHOREMEN'S ASSOCIATION, AFL-CIO, on behalf           :
of its members; and LOCAL 1814, INTERNATIONAL            :
LONGSHOREMEN'S  ASSOCIATION, AFL-CIO, on behalf          :
of its members,                                          :
                                                         :
                                  Plaintiffs,            :
                                                         :
                  -against-                              :
                                                         :
WATERFRONT COMMISSION OF NEW YORK                         :
HARBOR,                                                   :
                                                         :
                                  Defendant.             :
------------------------------------------------------------------------- x

Plaintiffs New York Shipping Association, Inc. (NYSA), on behalf of its members;

Metropolitan Marine Maintenance Contractors' Association, Inc. (MMMCA), on behalf of its

members; International Longshoremen's Association, AFL-CIO (ILA), on behalf of its members

and affiliated locals in the Port of New York and New Jersey (NY-NJ Port); Local 1804-1,

International Longshoremen's Association, AFL-CIO (ILA Local 1804-1), on behalf of its

members; and Local 1814, International Longshoremen's Association, AFL-CIO (ILA Local

1814), on behalf of its members, by their respective attorneys, as and for their Complaint,

respectfully allege as follows:

1

### INTRODUCTION

The Port of New York and New Jersey (the NY-NJ Port) is the hub of a vast system of national and international commerce.  Longshoremen working in three different crafts play an indispensable role in that commerce. Deep-Sea longshoremen load and unload cargo from ocean-going vessels, including goods shipped in interstate and international commerce.  Deep-Sea checkers and clerks perform clerical work involving the receipt and delivery of containers, the location of containers on the terminal, and the implementation of the plan for the sequence of containers to be loaded and off-loaded from the vessels.  Longshoremen engaged in the separate craft of maintenance and repair (M&R) maintain and repair containers, chassis, and cargo-handling equipment, which are essential to the flow of commerce.  These M&R workers are referred to as "A" Register longshoremen.

To assure the availability of skilled longshoremen to keep commerce flowing, now and into the future, employer associations such as NYSA and MMMCA have been formed to enter into collective bargaining agreements with labor organizations representing the longshoremen.  Thus, the roles of employers, longshoremen, and their bargaining representatives are vital to the NY-NJ Port and therefore vital to the economy of the United States.

Recently, a threat has arisen to the future of these roles and the commerce that flows therefrom.  That threat consists of unauthorized and unlawful regulatory activities by the Defendant Waterfront Commission of New York Harbor (Commission), which was created in 1953 by the Waterfront Commission Compact, Pub. L. 252, ch. 407, Sec. 1, 67 Stat. 541 (Aug. 12, 1953).[1]  During the past several months, in defiance of the limitations on its authority in the statute that created it, the Commission has gone off the rails to pursue a future role for itself that

---

[1] Unless otherwise noted, all citations to the Waterfront Commission Compact (Compact) are to the terms of the Compact enacted by 67 Stat. 541 (Aug. 12, 1953).

2

is well outside the purposes and goals that led to its creation.  It has issued regulations that are concededly beyond the Commission's authority and changed the requirements for hiring "A" Register longshoremen that have been in effect for more than 40 years and that unlawfully interfere with collective bargaining agreements in contravention of the Compact and federal labor law.

The Commission has also announced its intention to conduct hearings on matters outside its mandate that are at the heart of the employer-employee relationship: the recruitment, referral, selection, hiring, and training of new employees.  The Commission has adopted procedural rules for these hearings that violate fundamental principles of due process.  Plaintiffs bring this action to rein in the Commission's unauthorized actions and ensure that commerce continues to flow through the NY-NJ Port.

JURISDICTION

1.     This is an action for declaratory, injunctive, and other appropriate relief brought by Plaintiffs under 29 U.S.C.A. § 185 (West 1998); 28 U.S.C.A. §§ 1331 and 1337 (West 2006); and the Labor Management Relations Act (LMRA), 29 U.S.C.A. §§ 141-187 (West 1998 & Supp. 2013).

2.     This Court has federal-question jurisdiction over this action pursuant to 28 U.S.C.A. § 1331 (West 2006) in that (1) the Waterfront Commission Act (WCA), *see* N.J. STAT. ANN. §§ 32:23-1 — 32:23-121 (West 1990 & Supp. 2013); N.Y. UNCONSOL. LAWS §§ 9801 – 9937 (McKinney 2002 & Supp. 2013), which is the enabling statute for Defendant Commission, was approved by an Act of Congress, *see* Pub. L. No. 252, 67 Stat. 541 (1953), and is, therefore, federal law and (2) the action involves questions of federal law.

## VENUE

3.      This Court is one of proper venue pursuant to 28 U.S.C.A. § 2201 (West 2006) and 28 U.S.C.A. § 1391(b) (West Supp. 2013), since the Commission does business in and may be found in this district and the impact of the Commission's actions is felt in this district.

## PARTIES

4.      Plaintiff NYSA is a New York, not-for-profit, incorporated membership association with its principal office located at 333 Thornall Street, Suite 3A, Edison, New Jersey 08837.  NYSA is an association of marine terminal operators, stevedore companies, and ocean carriers engaged in international trade and commerce in the NY-NJ Port.  NYSA negotiates and administers collective bargaining agreements establishing the terms and conditions of employment of longshore workers represented by Plaintiff ILA.  NYSA administers these labor contracts on behalf of ocean carriers, marine terminal operators, stevedore companies, and other companies that employ approximately 3,500 of the 6,000 workers who are required to be registered by the Commission in order to work in the NY-NJ Port.

5.      Plaintiff MMMCA is a not-for-profit corporation duly registered under and by virtue of the laws of the State of New York with its principal office located at 301 Route 17 North, Rutherford, New Jersey 07070.  The MMMCA is an association of maintenance-contractor employers that negotiates and administers on their behalf collective bargaining agreements establishing the terms and conditions of employment of M&R workers and lashers represented by Plaintiffs ILA Local 1804-1 and ILA Local 1814 (MMCA-ILA CBA).  The MMMCA's members employ approximately 1,000 workers who are required to be registered by the Commission in order to work in the NY-NJ Port.

4

6.     Plaintiff ILA is an unincorporated association and labor organization within the purview of LMRA § 2(5), 29 U.S.C.A. § 152(5) (West 1998), which represents employees in an industry affecting commerce. Its principal office is located at 5000 West Side Avenue, North Bergen, New Jersey 07047. The ILA is the exclusive collective-bargaining representative certified by the National Labor Relations Board for all longshoremen and other waterfront workers employed by NYSA's members. The ILA, on behalf of its affiliated locals, negotiates, enters into, and administers with NYSA the NYSA-ILA Collective Bargaining Agreement (NYSA-ILA CBA), which prescribes the terms and conditions of employment for longshoremen and checkers/clerks in the NY-NJ Port who are on the Deep-Sea Register.

7.     Plaintiff ILA Local 1804-1 is an unincorporated association and a labor organization within the purview of LMRA § 2(5), 29 U.S.C.A. § 152(5) (West 1998), with its principal office located at 5000 West Side Avenue, North Bergen, New Jersey 07047. ILA Local 1804-1 represents M&R workers who are employed by NYSA's and MMMCA's members in the maintenance and repair of containers, chassis, and cargo-handling equipment predominately on the New Jersey side of the NY-NJ Port. ILA Local 1804-1 is a party to collective bargaining agreements with NYSA and MMMCA prescribing the terms and conditions of employment for M&R workers, the overwhelming majority of whom are on the "A" Register.

8.     Plaintiff ILA Local 1814 is an unincorporated association and a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C.A. § 152(5) (West 1998), with its principal office located at 70 20th Street, Brooklyn, New York 11232. ILA Local 1814 represents M&R workers who are employed by NYSA's and MMMCA's members on the New York side of the NY-NJ Port. ILA Local 1814 is a party to collective bargaining agreements with NYSA and MMMCA prescribing the terms and conditions of employment for

M&R workers, the overwhelming majority of whom are on the "A" Register.  ILA Local 1814 also represents Deep-Sea longshoremen covered by the NYSA-ILA CBA.

9.      Defendant Commission is a body corporate and politic created in 1953 by Section 1 of Pub. L. No. 252, 67 Stat. 541, which was enacted by Congress to "grant[] the consent of Congress to a compact between the State of New Jersey and the State of New York known as the Waterfront Commission Compact, and for other purposes." The Commission has its headquarters at 39 Broadway, 4th Floor, New York, New York 10006.  The Commission also has field offices located in Brooklyn, New York; Port Newark, New Jersey; and Edison, New Jersey.

## THE WATERFRONT COMMISSION ACT

### 1953 Waterfront Commission Compact

10.     In 1953, the States of New York and New Jersey each adopted laws that would form the Compact.

11.     The consent of Congress was necessary for the Compact to go into effect. Without the consent of Congress, the 1953 laws of New York and New Jersey cited above would have been ineffective because of the prohibition of Article I, Sec. 10 of the Constitution of the United States, commonly known as the Compacts Clause.

12.     No other port in the country is subject to the provisions of the Compact or any similar law.

13.     In *Waterfront Commission of N.Y. Harbor v. Construction and Marine Equipment Co.*, 928 F. Supp. 1388 (D.N.J. 1996), the District Court held that Article I, Section 10 of the Constitution of the United States required the submission of the Compact to Congress for its consent.

14.     As a result of Congressional consent, the Compact constitutes federal law.  As a result of Congressional consent in the form of Pub. L. No. 252, 67 Stat. 541 (1953), the Compact constitutes federal statutory law.

15.     The Compact provides for the delegation of certain regulatory powers to the Commission, including those related to the registration of longshore workers as set forth in Articles VIII and IX of the Compact.  The Compact establishes regulatory mechanisms to regularize longshore employment.  It empowers the Commission to maintain a register of individuals eligible for employment on the waterfront and to remove from the register, or decasualize, in compliance with standards established by the Commission individuals who do not apply regularly for work.  *See* N.J. STAT. ANN. §§ 32:23 — 27-32:23-28 (West 1990); N.Y. UNCONSOL. LAWS §§ 9827 — 9838 (McKinney 2002).

16.     The text of the Compact provides for limitations on the use of powers delegated to the Commission, including those set forth in Article XV, Sections 1 and 2 of the Compact.

17.     Article XV, Section 1 states:

> This compact is not designed and shall not be construed to limit in any way any rights granted or derived from any other statute or any rule of law for employees to organize in labor organizations, to bargain collectively and to act in any other way individually, collectively, and through labor organizations or other representatives of their own choosing.

*Id.*, 67 Stat. at 557.

18.     Article XV, Section 2 states:

> This compact is not designed and shall not be construed to limit in any way any rights of longshoremen . . . . or their employers to bargain collectively and agree upon any method for the selection of such employees by way of seniority, experience, regular gangs or otherwise; provided, that such employees shall be licensed or registered hereunder and such longshoremen . . . . shall be hired only through the employment information centers established

7

hereunder and that all other provisions of this compact be observed.

*Id.*, 67 Stat. at 557.

## POST-CONSENT LEGISLATION

### 1966 Legislation

19.     From its inception in 1953 the Commission exercised its powers under the Compact to eliminate the tremendous oversupply of longshore labor. By 1965, the Commission had removed from the register more than 25,000 casual workers. There still remained, however, a workforce numbering in the tens of thousands.

20.     In the 1964 NYSA-ILA CBA, the ILA agreed to allow reductions in manning because of productivity gains made possible by the new technology of containerization in exchange for management's promise to adopt a Guaranteed Annual Income (GAI) Program to compensate displaced workers.

21.     The legislative response to the GAI Program was the adoption in 1966 by each of the States of New York and New Jersey of the closed-register statute, often referred to as section 5-p, *see* N.J. STAT. ANN. § 32:23-114 (West 1990 & Supp. 2013); N.Y. UNCONSOL. LAWS § 9920 (McKinney 2002). On its face, the closed-register statute delegated power to the Commission to open and close the longshoremen's register, thereby regulating the size of the waterfront labor force. The register was promptly closed in 1966, and but for two openings in the late 1960's and one in 1978, it remained closed for more than three decades. By keeping the register closed no new employees could be brought into the industry. This assured that current members of the workforce would perform the work rather than receive GAI benefits while new members of the workforce performed the work.

**1969 Legislation**

22.     In 1969 New York and New Jersey passed statutes to broaden the definition of longshoreman to include a new class of registered longshoremen known as "A" registrants. *See* N.J. STAT. ANN. § 32:23-85(6) (West 1990); N.Y. UNCONSOL. LAWS § 9905(6) (McKinney 2002). The overwhelming majority of "A" registrants are M&R workers.

23.     The closed-register statute does not apply to "A" registrants. On its face, it applies only to those employed at marine terminals to perform work involving the loading and off-loading of ships, known as Deep-Sea longshoremen. Indeed, in *Bozzi v. Waterfront Commission of New York Harbor*, No. 90 CIV 926, 1994 WL 606043, at *7-8 (S.D.N.Y. 1994), the Commission successfully argued that the closed-register statute did not apply to the "A" Register, and represented that the Commission had "administratively excluded" "A" registrants from the closed-register statute.

**1999 Legislation**

24.     At the request of the stevedoring industry, labor shortages were repeatedly remedied by resolutions adopted by the Commission, which authorized temporary workers, who were later permanently admitted to the longshoremen's register by legislative amendments. *See, e.g.,* N.J. STAT. ANN. § 32:23-114(4)(c),(d),(e),(f),(g) (West 1990 & Supp. 2013); N.Y. UNCONSOL. LAWS § 9920(5)(c),(d),(e),(f),(g) (McKinney 2002). In 1999, each of the Legislatures of New York and New Jersey amended section 5-p to permit controlled openings to include in the register individuals sponsored by stevedore-company employers of Deep-Sea longshore workers.

25.     Under the terms of the 1999 legislation, however, stevedore-company employers cannot hire any new employee until the Commission has reviewed and approved the joint

recommendation of the employers' collective-bargaining representative and the labor organization representing their employees, namely NYSA and the ILA, respectively. This recommendation must indicate the number of new registrants sought by job category (*e.g.,* checker, container-equipment operator) and the number of new registrants to be allocated to each sponsoring employer.

26.     The Commission's sole statutory role once it has determined the number of additional workers needed by the industry is to register the workers selected by the employers once the selected workers have passed a criminal background check administered by the Commission.

27.     The 1999 legislation contained a certification provision requiring the sponsoring employer to certify that the selection of the sponsored persons "was made in a fair and non-discriminatory basis in accordance with the requirements of the laws of the United States and the states of New York and New Jersey dealing with equal employment opportunities." *See* N.J. STAT. ANN. § 3:23-114(1)(e) (West Supp. 2013); N.Y. UNCONSOL. LAWS § 9920(4) (McKinney 2002).

28.     From 2000 through 2010 there were nine openings of the Deep-Sea Register that added 3,100 new employees. All those employees were referred by the ILA. Not once did the Commission ever reject any of the section 5-p certifications made by sponsoring employers with respect to those employees.

29.     The terms of the 1999 legislation do not purport to cause section 5-p to apply to "A" registrants and for the next 14 years the Commission did not apply section 5-p to them.

## BACKGROUND FACTS

**The MMMCA –ILA Collective Bargaining Agreement**

30.     The MMMCA-ILA CBA establishes the terms and conditions of employment for all M&R employees and lashers in the NY-NJ Port employed by members of MMMCA.  For many decades the agreement has provided that the union is the exclusive source of new referrals. It states as follows:

> With respect to new employees, the Employer shall notify the Union of the number and classifications of employees required.  It shall be the responsibility of the Union to furnish the necessary employees requested by the Employer.  The Employer shall have the right to determine the competency and qualifications of the employees referred.  In the event that the Union is unable to supply qualified employees within thirty (30) days, then the Employer may secure the employees from any available source provided they abide by the Union Security Clause and Checkoff provisions.

**The NYSA-ILA Collective Bargaining Agreement**

31.     Earlier this year NYSA and the ILA agreed upon a new six-year collective bargaining agreement.  The focal point of the contract negotiations was getting the NY-NJ Port prepared to handle increased cargo volumes so that ocean carriers would be assured that stevedore companies in the NY-NJ Port would be able to offer efficient and cost-effective stevedoring services so that they could continue to utilize the NY-NJ Port as the preeminent port on the East Coast.  Under the auspices of the Federal Mediation and Conciliation Service, NYSA and ILA agreed upon increased productivity standards, a new relief-gang system, and the adoption of a recruitment and hiring program that would provide the additions to the workforce needed to handle the increased volumes.  To save costs, the new NYSA-ILA CBA provides for an enhanced window-pension package for longshore workers with more than 25 years in the industry.  To be eligible for that package, the workers must cease employment in the industry by

the earlier of April 1, 2014, or when a replacement worker is found and they have been released from employment. Approximately 250 workers will be retiring under this window package. In addition to replacing these retirees, the industry requires another 300 replacements for the workers who retired during the eight-year term of the prior agreement.

**NYSA-ILA Recruitment & Hiring Plan**

32.   In the new NYSA-ILA CBA, NYSA and the ILA agreed to a new Recruitment and Hiring Plan for Deep-Sea longshoremen and checkers/clerks. A copy of that plan is attached as Exhibit 1. Under that plan, 51% of the new workers to be hired will be comprised of honorably discharged military veterans, 25% of ILA referrals, and 24% of referrals from NYSA and its members.

**Commission Amends Hiring Regulations for M&R Workers**

33.   Over the years many of NYSA's stevedore-company members had established separate maintenance-contractor subsidiaries to employ "A" registrants for M&R work because the Commission maintained a policy that did not permit NYSA's members to hire "A" registrants. These subsidiaries became members of MMMCA and are parties to the MMMCA-ILA CBA.

34.   In May 2013 the Commission mentioned to NYSA that it had determined on its own that NYSA's members would now be permitted to hire "A" registrants. There are currently approximately 600-700 "A" registrants employed by the maintenance-contractor subsidiaries of NYSA's members.

35.   On July 23, 2013, after collective-bargaining negotiations between NYSA and the ILA, the NYSA-ILA CBA was amended to adopt the identical hiring procedure contained in the MMMCA-ILA CBA that has been used for many decades for the hiring of "A" registrants.

36.    On August 26, 2013, the Commission sent NYSA an e-mail advising that a proposed amendment to Section 4.4(d) of the Commission's Rules and Regulations (hereinafter Rule 4.4(d)) would be presented to the Commissioners for adoption on September 9, 2013.  Rule 4.4(d) prescribes the procedure for the inclusion of new employees in the "A" Register.  The e-mail attached the text of the following  proposed amendment:

> The sponsoring employer shall submit a letter setting forth the name and address of the person, and the labor service(s) to be performed, and shall certify that the selection of the persons so sponsored was made in a fair and nondiscriminatory basis in accordance with the requirements of the laws of the United States and the States of New York and New Jersey dealing with equal employment opportunities.

37.    By letter dated September 6, 2013, NYSA through its counsel, The Lambos Firm, LLP, submitted comments in opposition to the certification requirement in the Commission's proposed amendment.  In sum, NYSA's comments stated that the certification requirement (a) would alter the longstanding methodology for the hiring and registration of "A" registrants that has prevailed in the industry since 1969, (b) lacks statutory authority, and (c) conflicts with the NYSA members' obligations under the NYSA-ILA CBA.

38.    In an effort to permit its members to comply with both their obligations under the NYSA-ILA CBA and the Commission's proposed new rule, NYSA proposed the following amendment as an alternative to the Commission's proposed amendment:

> The sponsoring employer shall submit a letter setting forth the name and address of the employee, and the labor service(s) to be performed, and shall certify that to the extent of its involvement the hiring of the employee was fair and nondiscriminatory in accordance with the requirements of the laws of the United States and the States of New York and New Jersey dealing with equal employment opportunities.

39.     Since 1966 MMMCA's members have hired "A" registrants and not once were any of them required to submit a certification to the Commission in connection with their hiring of "A" registrants.   They were certainly affected by the Commission's proposed amendment. Yet, the Commission did not notify MMMCA of the pending adoption of the proposed regulation.   Instead, MMMCA was informed of the pending rule by NYSA.   MMMCA submitted comments by letter dated September 9, 2013, in which it also opposed the certification requirement and proposed an amendment substantially similar to NYSA's alternative.

40.     Notwithstanding the comments from the representatives of the affected employers, the Commission adopted its proposed amendment without any change on September 9, 2013. The Commission stated that it had already adopted the amendment before it had received MMMCA's comments.

41.     The Commission informed employers of "A" registrants that in order to hire individuals for the "A" register they must provide a certification that does not deviate from the language of the amended regulation and for that certification to be accepted by the Commission the employers could not continue to select applicants for "A" registration through the union-referral system set forth in their collective bargaining agreements.

**Request for an Opening of the Deep-Sea Register**

42.     On September 9, 2013, following months of discussions between NYSA and the Commission, NYSA and the ILA submitted by letter the industry's request to add 682 employees to the Deep-Sea Register: 532 longshoremen and 150 checkers and clerks.

43.     The Commission has agreed that 532 new longshoremen should be added to the Deep-Sea Register but has challenged the ILA's involvement in the collectively bargained

Recruitment and Hiring Plan, has characterized that Plan as a sham, and has interfered with the implementation of that Plan.

44.     The Commission has informed NYSA and ILA that it will not accept their Recruitment and Hiring Plan as written and has insisted that the definition of acceptable veterans be changed, that the ILA be prohibited from any recruiting veterans, and that NYSA's member-companies be prohibited from accepting any referrals from their union-represented employees.

45.     The Commission has insinuated itself into the administration of the Plan by refusing to accept certain veterans who in its opinion should not qualify for the veteran's preference and by threatening to reject applicants who in its opinion are not eligible for the veteran's preference because they were recruited by the ILA.   The Commission has also threatened to reject candidates proffered by NYSA and ILA for inclusion in the Deep-Sea Register, second-guessing whether they were properly evaluated under the terms of the Plan by the joint NYSA-ILA Screening Committee.

**The Commission's Notice of Hearings**

46.     By letter dated October 16, 2013, the Commission informed NYSA and the ILA that it had passed a resolution on October 8, 2013, scheduling public hearings.   Under the guise of a section 5-p proceeding to determine the appropriate number of new checkers and clerks to be added to the Deep-Sea Register, the Commission has proposed that it will decide issues involving recruitment, referral, selection, hiring and training of new Deep-Sea and "A" registrants.   Those issues are not only beyond the scope of section 5-p but also are subjects of collective bargaining, and thus its proposed involvement is directly at odds with the express limits on its authority set forth in Article XV of the Compact.

47.     In connection with these hearings, the Commission issued two resolutions establishing the scope of the issues and the procedural rules for the hearings.  These resolutions are attached to this Complaint as Exhibits 2 and 3.

48.     The resolution attached as Exhibit 2 recites that the Commission previously had determined that contract provisions set forth in the NYSA-ILA and MMMCA-ILA collective bargaining agreements relating to the hiring procedures for "A" registrants "promote various conditions . . . including . . . the lack of a systemic method of hiring, irregularity of employment, the lack of adequate information regarding the availability of employment, and the selection of employees by those who are neither responsive nor responsible to the employers" (the Secret Determination).

49.     The Secret Determination was made without notice to MMMCA or NYSA and without any opportunity for them to be heard.   On information and belief, the Secret Determination was made under circumstances known to preclude judicial review.

50.     On information and belief, the resolution (Exhibit 2) does not provide adequate or accurate notice of the subject matter of the scheduled hearing because it suggests that the hearing is actually scheduled to "determine . . . the appropriate manner for the recruitment, referral, selection, hiring and training of individuals" to work as "A" register longshoremen in the NY-NJ Port, even though that issue had been pre-judged by the Commission, at least in substantial part, in some unspecified setting at some unspecified date in some unspecified context by the Secret Determination before the Commission adopted the resolution scheduling the hearing.

51.     The Commission also issued special rules of procedure for the hearings (Exhibit 3).  Under these rules, the Commission has granted to itself sole authority to determine the

witnesses who will testify at the hearings, all questions that will be asked to those witnesses, and the evidence that will make it into the record of the hearing.

## COUNT I

### The Commission's Rules For Its Noticed
### Public Hearing Violate The Due Process
### Rights Of Plaintiffs And Their Members

52.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 51, inclusive, of this Complaint, as though fully set forth at length herein.

53.     In its resolution adopted on October 22, 2013, the Commission announced its rules of procedure for the hearings it intends to conduct (Exhibit 3).

54.     Under one rule, witnesses who will testify before the Commission may read a prepared or written statement, but that statement must be submitted to the Commission in advance of the hearings, and the Commission will determine whether that statement will be received and made a part of the record of the proceedings.

55.     Under another rule, any person who is not a witness but whose name is mentioned or who considers himself adversely affected by evidence presented at the hearing may request the opportunity to testify or submit a sworn statement, but once again the Commission will determine whether that testimony or statement will be received and made a part of the proceedings.

56.     The rules do not permit Plaintiffs to conduct cross-examination of witnesses called by the Commission or to call their own witnesses.

57.     The Commission has adopted special rules of procedure for the hearings, even though Part 6 of its Rules and Regulations sets forth common procedural rules that are conducive to ensuring that parties are provided due process.

58.    Plaintiffs are entitled to a declaration that the special rules of procedure mandated by the Commission for its noticed public hearings that are set forth in Exhibit 3 to this Complaint do not comport with the due-process rights guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States, and to temporary and permanent injunctive relief prohibiting the use of these rules for the noticed hearings.

## COUNT II

### The Commission Acted In Excess Of Its Regulatory Authority By Adopting The September 9, 2013 Amendment To Rule 4.4(d)

59.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 58, inclusive, of this Complaint, as though fully set forth at length herein.

60.    The members of Plaintiffs NYSA and MMMCA have been and will continue to be impeded and impaired in their business operations by the Commission's amendment to Rule 4.4(d).

61.    The amendment to Rule 4.4(d) cites no statutory authority.

62.    The language of the amendment to Rule 4.4(d) is derived almost *verbatim* from the certification provision in section 5-p(4).  It has no counterpart in the Compact.

63.    The only provision of the Compact purporting to delegate rulemaking authority to the Commission is Article IV, Section 7, which provides in relevant part:

> To make and enforce such rules and regulations as the commission may deem necessary to effectuate *the purposes of this compact* or to prevent the circumvention or evasion thereof . . . .

67 Stat. at 544 (emphasis added).

64.    The term "compact" in the Compact is defined to mean "this compact and rules or regulations lawfully promulgated thereunder."  67 Stat. at 543.

65.     Thus, the Compact must be so construed that the Commission has no regulatory authority with respect to any purpose that is not a purpose appearing in the Compact, Pub. L. 252, ch. 407, Section 1 (Aug. 12, 1953).

66.     The purposes of the Compact did not include requiring employers to certify that the selection of longshoremen to be registered complied with federal and state laws dealing with equal employment opportunities because those laws did not exist at the time that the Compact was enacted.

67.     Plaintiffs are entitled to injunctive relief preventing any attempt by the Commission to continue to enforce the amendment to Rule 4.4(d) and to a declaration that the amendment to Rule 4.4(d) is void and of no effect.

## COUNT III

### The Commission's Amendment To Rule 4.4(d)
### Of Its Rules And Regulations Is
### Arbitrary And Capricious

68.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 67, inclusive, of this Complaint, as though fully set forth at length herein.

69.     The Commission's purported authority for its amendment to Section 4.4(d) of its Rules and Regulations is section 5-p.

70.     But neither section 5-p nor any other provision of law authorizes the Commission to require employers to submit a certification with respect to the hiring of "A" registrants.

71.     For decades the Commission has consistently maintained the position that section 5-p does not apply to "A" registrants.  Indeed, in *Bozzi v. Waterfront Comm'n of N.Y. Harbor*, No. 90 Civ. 0926, 1994 WL 606043, at *5, *7-10 (S.D.N.Y. Nov. 3, 1994), the court accepted

the Commission's representation that "it has consistently interpreted [section 5-p] as applying only to the Deep-Sea longshoremen's register and not to the A Register."

72.     The amendment to Rule 4.4(d) lacks statutory authority because the certification requirement of section 5-p does not apply to "A" registrants, who are the sole subject of Rule 4.4(d).

73.     Plaintiffs are entitled to injunctive relief preventing any attempt by the Commission to continue to enforce the amendment to Rule 4.4(d) and to a declaration that the amendment to Rule 4.4(d) is void and of no effect and the Commission's abrupt about-face with respect to the application of the certification requirements of section 5-p to "A" registrants is arbitrary and capricious.

**COUNT IV**

**The Commission Has Violated
The Compact By Interfering With
Plaintiffs' Collective-Bargaining Rights
In Connection With The Certification
Requirement In The Amendment To Rule 4.4(d)**

74.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 73, inclusive, of this Complaint, as though fully set forth at length herein.

75.     Article XV of the Compact expressly prohibits the Commission from interfering "in any way [with] any rights of longshoremen . . . or their employers to bargain collectively and agree upon any method for the selection of such employees by way of seniority, experience, regular gangs or otherwise." *See* 67 Stat. at 557, *codified* at N.J. STAT. ANN. § 32:23-68 (West 1990) and at N.Y. UNCONSOL. LAWS § 9868 (McKinney 2002).

76.     The Commission interprets the certification provision of the amendment to Rule 4.4(d) to permit the Commission to outlaw the formation of an employer-employee relationship

for work as a longshoreman between any employer and any individual unless the employer can certify that the selection of the individual "was made in a fair and nondiscriminatory basis in accordance with the requirements of the laws of the United States and the States of New York and New Jersey dealing with equal employment opportunities."

77.     Under the Commission's interpretation the certification is invalid unless the employer is involved in both the recruitment and selection of the individual.  Thus, under the Commission's interpretation, the certification is invalid if the labor union refers the applicants from which the employer selects the person to be hired.

78.     It is the Commission's position that in order to hire individuals for the "A" Register employers must provide a certification that does not deviate from the amendment to Rule 4.4(d) and for that certification to be accepted by the Commission the employers cannot continue to select applicants for "A" registrants through the union-referral system set forth in the NYSA-ILA and MMMCA-ILA collective bargaining agreements.

79.     Since the Compact does not give the Commission jurisdiction over any union, the Commission is seeking to remove Plaintiffs ILA, ILA Local 1804-1, and ILA Local 1814 from the employee-referral process by refusing to allow employers to hire new workers referred by them, thereby requiring employers to choose between breaching their collective bargaining agreements or seeking to renegotiate them.  The consequences of either course of action will cause employers, including the members of NYSA and MMMCA, to suffer irreparable injury in the form of unfair labor practice charges, actions for breach of contract, concessions during renegotiations, or other injuries that cannot be quantified.

80.     The effect of the Commission's interpretation of the certification requirements in the amendment to Rule 4.4(d) would be to interfere with the right to bargain collectively

established by the Compact and other federal statutory law and is based on a construction of the Compact that is expressly prohibited by Article XV, Section 2 of the Compact.

81.     Based on each of the foregoing, the Commission has violated the Compact's express safeguards of Plaintiffs' collective-bargaining rights by interfering with their right to bargain collectively and to administer the terms of the NYSA-ILA CBA and the MMMCA-ILA CBA.

82.     Plaintiffs are entitled to a declaration that the Commission's interpretation of the certification requirement in the amendment to Rule 4.4(d) violates its own Compact and to temporary and permanent injunctive relief prohibiting application of that interpretation.

**COUNT V**

**The Commission's Interpretation Of The Amendment
To Rule 4.4(d) Violates National Labor Policy By Attempting
To Dictate The Substantive Terms Of Plaintiffs'
Collective Bargaining Agreements**

83.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 82, inclusive, of this Complaint, as though fully set forth at length herein.

84.     The well-established labor policy of the United States prohibits both state governments and the federal government from attempting to influence or dictate the substantive terms of collective bargaining agreements.

85.     The Commission's application of the amendment to Rule 4.4(d) requires the members of Plaintiffs NYSA and MMMCA to eschew the union-referral systems of their labor contracts in order to employ "A" registrants.

86.     Plaintiffs are entitled to injunctive relief preventing any attempt to continue to enforce the Commission's interpretation of the amendment to Rule 4.4(d), and to a declaration

22

that its interpretation by the attempts to influence and dictate the substantive terms of Plaintiffs'

collective bargaining agreements, thus violating the public policy of the United States.

## COUNT VI

### The Certification Provision In Section 5-p Is An
### Invalid Amendment Of The Compact.

87.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through

86, inclusive, of this Complaint, as though fully set forth at length herein.

88.    Article XVI of the Compact provides as follows:

> Amendments and supplements to this compact *to implement the purposes thereof* may be adopted by the action of the Legislature of either State concurred in by the Legislature of the other.

67 STAT. at 557 (emphasis added)

89.    Thus, any amendment or supplement to the Compact to be valid must implement

a purpose that appears in the Compact, Pub. L. 252, ch. 407, Section 1 (Aug. 12, 1953).  If it

does not, it lacks Congressional approval.

90.    While the original legislation in 1966 enacting section 5-p implemented the

purposes of the Compact, the certification provision  in the 1999 Legislation amending section 5-

p does not.

91.    The purposes of the Compact could not include requiring employers to certify that

the selection of longshoremen to be registered complied with federal and state laws dealing with

equal employment opportunities because those laws did not exist at the time that the Compact

was enacted.

92.    Plaintiffs are entitled to injunctive relief preventing any attempt by the

Commission to continue to enforce the certification provision of section 5-p and to a declaration

that the certification provision is void and of no effect because it is an invalid amendment to the Compact that lacks congressional approval, since it does not implement or further the purposes of the Compact.

## COUNT VII

### The Commission Is Prohibited By Article XV Of The Compact From Determining Or Revising Matters Contained In The Plaintiffs' Collective Bargaining Agreements

93.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 92, inclusive, of this Complaint, as though fully set forth at length herein.

94.     In the new NYSA-ILA CBA, NYSA and the ILA agreed to a new Recruitment and Hiring Plan for Deep-Sea longshoremen and checkers/clerks.  The NYSA-ILA CBA and MMMCA-ILA CBA contains provisions relating to the recruitment, referral, selection, hiring, and training of new longshoremen matters that are mandatory subjects of bargaining.

95.     Article XV of the Compact expressly prohibits the Commission from limiting "in any way any rights of longshoremen . . . or their employers to bargain collectively . . . ." *See* 67 Stat. at 557, *codified* at N.J. STAT. ANN. § 32:23-68 (West 1990) and at N.Y. UNCONSOL. LAWS § 9868 (McKinney 2002).

96.     The Commission has informed NYSA and ILA that it will not accept their Recruitment and Hiring Plan as written and has insisted that the definition of veterans be changed, that the ILA be prohibited from recruiting veterans, and that NYSA's member-companies be prohibited from accepting referrals from their union-represented employees.

97.     The Commission is seeking to determine and thus revise provisions that have been negotiated and agreed to in Plaintiffs' collective bargaining agreements relating to the recruitment, referral, selection, hiring and training of new longshoremen.

98.     Plaintiffs are entitled to a declaration that the Commission is prohibited by Article XV of the Compact from determining the appropriate manner for the recruitment, referral, selection, hiring, and training of individuals to be included in the Deep-Sea and "A" Registers and from attempting to revise the Recruitment and Hiring Plan in the NYSA-ILA CBA and to temporary and permanent injunctive relief prohibiting the Commission from attempting to make such determinations and revisions.

### COUNT VIII

**The Commission's Attempts To Determine And Revise
Provisions In Plaintiffs' Collective Bargaining Agreements
Violates National Labor Policy**

99.     Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 98, inclusive, of this Complaint, as though fully set forth at length herein.

100.    The well-established labor policy of the United States prohibits both state governments and the federal government from attempting to influence or dictate the substantive terms of collective bargaining agreements.

101.    The Commission's attempts to determine the appropriate manner for the recruitment, referral, selection, hiring and training of new longshoremen and to revise the Recruitment and Hiring Plan in the NYSA-ILA CBA violates that labor policy.

102.    Plaintiffs are entitled to a declaration that the Commission's attempts to determine the appropriate manner for the recruitment, referral, selection, hiring, and training of new longshoremen and to revise the Recruitment and Hiring Plan in the NYSA-ILA CBA are directly at odds with the public policy of the United States because they attempt to influence and dictate the substantive terms of Plaintiffs' collective bargaining agreements and to temporary and

permanent injunctive relief prohibiting the Commission from attempting to make such determinations and revisions.

## COUNT IX

**The Primary And Exclusive Jurisdiction Doctrine
Precludes The Commission From Attempting To
Decide And Remedy Perceived Violations Of Federal
And State Employment-Discrimination Laws**

103.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 102, inclusive, of this Complaint, as though fully set forth at length herein.

104.    Since the inclusion of the certification in section 5-p in 1999, the Commission has never questioned the veracity of the certifications submitted by the employers.  The certification was first adopted by the Commission itself in a resolution issued in 1978 providing for the temporary registration of 750 longshoremen to be selected and referred to the Commission by the NYSA-ILA Contract Board "on a fair and non-discriminatory basis and in accordance with the requirements of the laws of the United States and the States of New York and New Jersey dealing with equal employment opportunities."  This certification was designed to shield the Commission from liability in lawsuits against the Commission for employment discrimination.

105.    Now the Commission is attempting to use the certification as a sword to deny registration to new applicants chosen in a manner the Commission believes violates the employment-discrimination laws.

106.    Federal and state governments have established agencies that are statutorily mandated to determine purported violations of the employment-discrimination laws.  These agencies have exclusive and primary jurisdiction to decide employment-discrimination charges.

107.    If the Commission believes that there has been a violation of federal or state employment-discrimination law, the Commission should refer the matter to the appropriate agency created to enforce the particular law that in the Commission's opinion has been violated.

108.    Plaintiffs are entitled to an injunction prohibiting the Commission from using federal or state employment-discrimination laws, which it is not authorized to enforce, to deprive members of NYSA or MMMCA of their right to hire workers that they desperately need, and a declaration that the Commission lacks jurisdiction to determine violations of federal or state employment-discrimination laws.

## COUNT X

### The Certification Provision in
### Rule 4.4(d) As Amended Is So Vague
### That Its Enforcement Would Violate Due Process

109.    Plaintiffs repeat and reallege each and every allegation in paragraphs 1 through 108, inclusive, of this Complaint, as though fully set forth at length herein.

110.    The matter to be certified under section 5-p and under the amendment to Rule 4.4(d) cannot be determined by an individual conversant in English from the text of the certification provision, because the phrase "fair and nondiscriminatory basis" might establish a standard separate from and in addition to compliance with "the requirements of the laws of the United States and the States of New York and New Jersey dealing with equal employment opportunities," or it might be intended to equate "fair and nondiscriminatory basis" with "the requirements of the laws of the United States and the States of New York and New Jersey dealing with equal employment opportunities." The latter interpretation runs counter to accepted canons of statutory construction, but the former interpretation runs counter to the notion that agencies formed by interstate compacts are not sovereigns with their own ability to make laws.

In any event, if the phrase "fair and nondiscriminatory basis" establishes a separate and independent standard, it is impossible to tell from the words of the amendment what that standard is.

111.    The matter to be certified cannot be determined by an individual conversant in English from the text of the certification provision, because the phrase "in accordance with the requirements of the laws of the United States and the States New York and New Jersey dealing with equal employment opportunities" might refer to any of the following, mutually exclusive standards: (a) only a practice that violates all three of the sets of laws referred to; (b) only a practice that violates the laws of the United States and one of the states that are parties to the Compact (perhaps the one where the hiring occurs); (c) any practice that violates the laws of the United States or the laws of both of the states that are parties to the Compact; or (d) any practice that violates any one of the three sets of laws.  There is no basis in the text of the amendment for preferring any of these four possibilities over another.

112.    Despite the inherent vagueness of the certification provision, it appears that the Commission will nevertheless force waterfront employers to sign such a certification in *haec verba* in order to continue doing any business involving the services of longshoremen.

113.    Plaintiffs are entitled to a declaration that the certification in section 5-p and in the amendment to Rule 4.4(d) is void under the Due Process Clause of the Fifth Amendment (or, in the alternative, the Due Process Clause of the Fourteenth Amendment) and temporary and permanent injunctive relief prohibiting its enforcement.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request that this Court issue a judgment:

a.      Granting the declaratory and injunctive relief requested in each of the Counts;

b.      Retaining jurisdiction over this action to the extent necessary to ensure compliance with this Court's orders; and

c.      Granting such other and further relief as this Court may deem just and proper.

**Dated:** November 22, 2013

THE LAMBOS FIRM, LLP

By:_____s/ James R. Campbell_____
    James R. Campbell
    599 Avenue C
    Bayonne, New Jersey 07002
    (201) 823-1000

        and

    Donato Caruso, Pro hac vice
      application pending
    The Lambos Firm, LLP
    303 South Broadway, Suite 410
    Tarrytown, New York 10591
    (212) 943-2470

    *Counsel for Plaintiff*
    *New York Shipping Association, Inc.,*

MARRINAN & MAZZOLA MARDON, P.C.

By:_____s/ John P. Sheridan_____
    John P. Sheridan
    26 Broadway, 17th Floor
    New York, New York 10004
    (212) 425-3240

        and

    Kevin Marrinan, Pro hac vice
      application pending
    Marrinan & Mazzola Mardon, P.C.
    26 Broadway, 17th Floor
    New York, New York 10004
    (212) 425-3240

    *Counsel for Plaintiffs*
    *International Longshoremen's*
    *Association, AFL-CIO and*
    *Local 1814, International*
    *Longshoremen's Association, AFL-CIO*

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:_____s/ Edward Cerasia II_____
    Edward Cerasia II
    Ronald Kreismann, Pro hac vice
      application pending
    1745 Broadway, 22nd Floor
    New York, New York 10019
    (212) 492-2500

    *Counsel for Plaintiff*
    *Metropolitan Marine Maintenance*
    *Contractors Association, Inc.*

DAGGETT, KRAEMER & GJELSVIK

By:_____s/ George T. Daggett_____
    George T. Daggett
    328 D Sparta Avenue
    Sparta, New Jersey 07871
    (973) 729-2117

    *Counsel for Plaintiff*
    *Local 1804-1, International*
    *Longshoremen's Association, AFL-CIO*

*A0025076*

# EXHIBIT 1

# MEMORANDUM OF SETTLEMENT
# OF LOCAL CONDITIONS IN THE
# PORT OF NEW YORK AND NEW JERSEY

This **MEMORANDUM OF SETTLEMENT** entered into this 28th day of August, 2013, by and between **NEW YORK SHIPPING ASSOCIATION, INC.** ("NYSA") on behalf of its members and the **INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO** ("ILA") on behalf of itself and its affiliated locals representing longshoremen, clerks, checkers, maintenance workers and all other craft employees in the Port of New York and New Jersey ("PONY-NJ") settles all local conditions under the NYSA-ILA Collective Bargaining Agreement on the following basis effective, except where otherwise provided herein, on October 1, 2012, and together with the Master Contract between the ILA and the UNITED STATES MARITIME ALLIANCE LIMITED ("USMX") that will go into effect on October 1, 2012, establishes for the six-year period ending September 30, 2018, the terms and conditions of employment for all craft employees in the PONY-NJ covered by NYSA-ILA Collective Bargaining Agreement:

**The following provisions shall be incorporated into the NYSA-ILA Collective Bargaining Agreement (NYSA-ILA CBA):**

## I.  PENSIONS

### A.  SPECIAL WINDOW PENSION

1.  Working pensioners and employees who have a minimum of 25 years of credited service as of April 1, 2014, and who are actively employed under the NYSA-ILA CBA as of April 12, 2013, shall be entitled to receive a special window pension in the amount of One Hundred Sixty ($160.00) dollars per month for each year of credited service provided (a) they give written notification to the NYSA-ILA Pension Trust Fund (PTF) of their selection of the special window pension by June 11, 2013, (b) they remain employed in the longshore industry until the earlier of April 1, 2014, or the date upon which they are released from employment by NYSA, and (c) they actually retire and terminate their employment in the longshore industry.

2.  Former hiring agents who return to active employment in the longshore industry under the NYSA-ILA CBA prior to January 1, 2014, and who have a minimum of 25 years of credited service as of April 1, 2014, shall be entitled to receive a special window pension in the amount of One Hundred Sixty ($160.00) dollars per month for each year of credited service provided (a) they give written notification to PTF of their selection of the special window pension by December 31, 2013, (b) they remain employed in the longshore industry until the earlier of April 1, 2014, or the date upon which they are released from employment by NYSA, and (c) they actually retire and terminate their employment in the industry. Effective January 1, 2014, Hiring Agents are removed from the definition of "Employee" in Article II, section 1(b)(1)

### C.   PRODUCTIVITY COMMITTEE

1.   The NYSA-ILA Productivity Committee shall establish processes and procedures to achieve the productivity standard and the implementation of the new Relief Gang System and to consider any alternative methods to achieve the productivity standard.

2.   The NYSA-ILA Productivity Committee shall also have the authority to determine what actions would be appropriate when individuals or gangs fail to meet the productivity standard.

3.   When an Employer and an ILA local cannot mutually agree on filling gang vacancies, the NYSA-ILA Productivity Committee shall resolve the dispute.

## V.   RECRUITMENT AND HIRING

### A.   RECRUITMENT

1.   The selection process for new hires will include three designated referral sources: Military Veterans (51%), ILA (25%), and NYSA/Employers (24%). With respect to military veterans, recent efforts to recruit and hire veterans who served in the War on Terror have succeeded in hiring a number of new employees in the Port. Experience has shown that returning veterans already possess many of the skills that are crucial to longshore work. Moreover, veterans are used to working under adverse weather conditions — another essential requirement for longshore work in the Port.

2.   A Recruitment Committee will be established to create the pool of veterans from the NY-NJ-PA Metropolitan Area, the region where most of the current longshore workers reside (hereinafter "Relevant Area"). To be eligible, veterans must have been honorably discharged and must be capable of performing the required job functions based upon prior experience or completion of a training program designated by the ILA and NYSA. No government or private agency will be used as a source of referrals unless it has been approved in advance by the Recruitment Committee.

3.   NYSA will create its pool of potential candidates by soliciting in the Relevant Area its direct-employer members and their employees and community-based organizations, such as churches, schools, including vocational schools and truck-driver and heavy-equipment-operator schools, and employment centers.

4.   The ILA's pool will consist of individuals referred by the Executive Board of the relevant ILA local and by union members. The ILA locals will notify their members of the job opportunities through discussions at membership meetings, mailings, and postings.

4

### B.   SCREENING OF EACH OF THE THREE POOLS

1.     Every applicant from each of the three pools will be vetted by a tri-partite committee ("Employment Screening Committee") consisting of the terminal-operator Employer, the ILA Director of Safety, and the NYSA Director of Workforce Development.

2.     Applicants will be interviewed and evaluated by the Employment Screening Committee pursuant to Candidate Scoring Matrices (CSM) that contain uniform and job-related criteria to be established by the Employment Screening Committee based upon the essential functions of longshore work adduced from standard industry job descriptions.  Each member of the Employment Screening Committee will score the applicant for each of the criteria on a scale of 0 to 5.  The screeners' scores will be added together for each applicant.

### C.   PREEMPLOYMENT PROCESSING

1.     Applicants approved by the Employment Screening Committee will be referred for pre-employment drug and physical agility testing.

2.     A designated number of candidates from each referral source who pass a drug test and who have successfully completed the physical agility test will be directed to the Waterfront Commission for registration in the rank order of their CSM scores.

3.     In the event of undue delays in processing the registration of any referrals by any governmental agency, the NYSA and the ILA agree to join in an appropriate legal action to restrain this or any other discriminatory conduct.

## VI.   RELIEF GANG SYSTEM

### A.   STRUCTURE OF GANGS

1.     The basic ten-person gang will remain in place until the implementation of the Relief Gang System and the new starting times and guarantees set forth in Section VI (D) of this Memorandum of Settlement.

2.     At the commencement of the Relief Gang System, all gangs will be reduced by one (1) hold position.  At such point the basic gang will consist of nine (9) persons.

3.     If a gang is projected to work sixteen (16) hours or fewer, the gang will work to completion and the minimum guarantees contained in the 2004-2012 NYSA-ILA CBA will continue to apply.

4.     A gang is not permitted to work for more than sixteen (16) continuous hours.  If due to unforeseen circumstances, a gang needs to work beyond sixteen (16) hours, an appropriate penalty differential will be applied as determined by the NYSA-ILA Productivity Committee.

5

# EXHIBIT 2

## RESOLUTION

### Deep Sea Longshoremen's Register

WHEREAS, on September 9, 2013, the International Longshoremen's Association, AFL-CIO (ILA) and New York Shipping Association, Inc. (NYSA) requested the Commission, on its own initiative pursuant to Part I, Article IX, Section 5-p(1)(a) of the Waterfront Commission Act, to open the deep sea Longshoremen's Register for the addition of 532 longshore employees and 150 checker/clerks in order to alleviate shortages of labor in the Port of New York-New Jersey; and

WHEREAS, the Commission has independently recognized that there is a need for additional labor and has determined to open the deep sea Longshoremen's Register on its own initiative; and

WHEREAS, pursuant to Part I, Article IX, Part I, Section 5-p(4) of the Waterfront Commission Act, where the Commission determines to accept applications for inclusion in the Longshoremen's Register on its own initiative, such acceptance shall be in such manner deemed appropriate by the Commission; and

WHEREAS, Part I, Article IX, Section 5-p(2) of the Waterfront Commission Act enumerates certain standards that the Commission must observe in administering the provisions of the Act pertaining to the opening of the register, including, *inter alia*: encouraging as far as practicable the regularization of the employment of longshoremen; bringing the number of eligible longshoremen more closely into balance with the demand for longshoremen's services within the Port of New York district without reducing the number of eligible longshoremen below that necessary to meet the requirements of longshoremen in the Port of New York district; encouraging the mobility and full utilization of the existing work

force of longshoremen; eliminating oppressive and evil hiring practices injurious to waterfront labor and waterborne commerce in the Port of New York district including, but not limited to, those oppressive and evil hiring practices that may result from either a surplus or shortage of waterfront labor; considering the effect of technological change and such other economic data and facts as are relevant to a proper determination; and protecting the public interest in the Port of New York district; and

WHEREAS, the NYSA and ILA have advised that the NYSA and ILA will recruit, hire and train these new individuals in accordance with the terms of the Recruitment and Hiring plan of the new NYSA-ILA collective bargaining agreement, which provides that the selection process for new hires will include three designated referral sources: Military Veterans (51%), ILA (25%) and NYSA/Employers (24%); and

WHEREAS, Part I, Article XII, Section 1 of the Waterfront Commission Act eliminated the method of employment of longshoremen and port watchmen commonly known as the "shape-up," a method which, *inter alia*, resulted in a loss of fundamental rights and liberties of labor, impaired the economic stability of the Port of New York district, and weakened law enforcement therein; and

### "A" or "1969 Amendment" Longshoremen's Register

WHEREAS, Part I, Article IX, Section 5-p of the Waterfront Commission Act provides that the Commission may, under such terms and conditions as the Commission may prescribe, include in the "A" or "1969 Amendment" longshoremen's register certain longshoremen who perform, *inter alia*, maintenance and other tasks involving, or incidental to, cargo handling pursuant to the 1969 amendments of the Waterfront Commission Act, and

2

whose employment is not subject to the guaranteed annual income provisions of any collective bargaining agreement relating to longshoremen; and

WHEREAS, the hiring procedures for "A" registrants set forth in the collective bargaining agreement between the NYSA and the International Longshoremen's Association (ILA), and the hiring procedures set forth in the collective bargaining agreement between the Metropolitan Marine Maintenance Contractors' Association, Inc. (MMMCA) and the ILA provide, with respect to new employees, that the employers shall notify the ILA of the number and classifications required and it shall be the responsibility of the ILA to furnish the necessary employees requested by the NYSA or MMMCA employer; and

WHEREAS, the Commission has determined that the hiring procedures set forth in those collective bargaining agreements with regard to "A" registrants promote various conditions that are expressly enumerated in the Findings and Declarations set forth at  Part I, Article I of the Waterfront Commission Act, including, *inter alia*, the lack of a systematic method of hiring, irregularity of employment, the lack of adequate information as to the availability of employment, and the selection of employees by those who are neither responsive nor responsible to the employers; and

### Public Hearings

WHEREAS, the Commission is empowered under Part I, Article IV, Section 12 of the Waterfront Commission Act to advise and consult with representatives of labor and industry and with public officials and agencies concerned with the effectuation of the purposes of the Act, upon all matters which the Commission may desire, including but not limited to the form and substance of rules and regulations, the administration of the Act, maintenance of the longshoremen's register, and issuance and revocation of licenses; and

WHEREAS, the Commission is empowered under Part I, Article IV, Section 11 of the Waterfront Commission Act to make investigations, collect and compile information concerning waterfront practices generally within the Port of New York district and upon all matters relating to the accomplishment of the objectives of the Act; and

WHEREAS, the Commission is empowered under Part I, Article IV, Section 8 of the Waterfront Commission Act by its members and its properly designated officers, agents and employees, to administer oaths and issue subpoenas to compel the attendance of witnesses and the giving of testimony and the production of other evidence; be it hereby

RESOLVED, that a public hearing be held on the record to determine the number of individuals that would be appropriate to add to the deep sea Longshoremen's Register, and to determine the appropriate manner for the recruitment, referral, selection, hiring and training of individuals to be included in that Register; and

FURTHER RESOLVED, that a public hearing be held on the record to determine the appropriate manner for the recruitment, referral, selection, hiring and training of individuals to be included in the "A" or "1969 Amendment" Longshoremen's Register; and

FURTHER RESOLVED, that a public hearing shall commence on November 14, 2013 at 9:30 a.m. at 39 Broadway, Fourth Floor, New York, New York and continue on November 18, 2013 and November 25, 2013, and any other adjourned dates(s) that may be set by the Commission.



ADOPTED BY THE COMMISSION ON 10/08/13

4

# EXHIBIT 3

RESOLUTION

WHEREAS, the Waterfront Commission of New York Harbor ("Commission") resolved on October 8, 2013 to hold a public hearing on November 14, 2013, November 18, 2013 and November 25, 2013, and any other adjourned dates(s) that may be set by the Commission, to determine the number of individuals that would be appropriate to add to the deep sea Longshoremen's Register, and to determine the appropriate manner for the recruitment, referral, selection, hiring and training of individuals to be included in the "deep sea" Longshoremen's Register and the "A" or "1969 Amendment" Longshoremen's Register; and

WHEREAS, the Commission deems it desirable to establish rules of procedure for the public hearing, be it

RESOLVED, that the following rules of procedure be and hereby are established for the public hearing of the Commission on November 14, 2013, November 18, 2013 and November 25, 2013, and any other adjourned dates(s) that may be set by the Commission:

1.      The questioning of witnesses by the Commission shall be conducted by its members and its properly designated officers, agents and employees.

2.      The testimony of all witnesses shall be under oath.

3.      Any person called to testify as a witness, or who avails himself or herself of the opportunity to be heard, may be represented by an attorney who is a member of good standing of the Bar of the State of New York or the Bar of the State of New Jersey. The appearance of counsel shall be noted on the record. Such counsel may advise the witness of his or her legal rights while that witness is testifying. This, however, shall not be construed to excuse a witness from testifying in the event said counsel is ejected for contumacy or disorderly conduct; nor shall this rule be construed as authorizing counsel to answer for, or suggest answers to, the witness.

4.      The failure of any witness to secure counsel will not excuse such witness from attendance in response to a Commission-issued subpoena.  Counsel for a witness shall have the right to propose, in writing, to the Commission questions to be asked of the witness relevant to matters upon which the witness has been questioned.  The Commission shall review said submitted questions and ask the witness such questions as it may deem appropriate.

5.      Any witness who desires to read a prepared or written statement shall, prior to its offer, file a copy of said statement with the Secretary of the Commission no later than November 4, 2013.  The Commission, in its reasonable discretion, shall determine whether or not such statement shall be received and made part of the proceedings.

6.      A stenographic record of the hearing shall be made and transcripts thereof may be furnished to any person after the conclusion of the hearing upon payment to the Commission of the reproduction costs thereof as established by Section 1.23(f) of the *Rules and Regulations of the Waterfront Commission of New York Harbor*.

7.      Any person who shall not have been examined as a witness at the hearing and whose name is mentioned, or who is specifically identified and who deems to be adversely affected by any evidence adduced thereat, may request to testify in his or her own behalf or file a sworn statement of facts relevant to the testimony or other evidence affecting such person.  Such request to testify, or such statement, shall be submitted to the Commission for its consideration and may be admitted into the record in the reasonable discretion of the Commission.

8.      The hearing will be open to the public.  No photographs or the taking of motion pictures or videos or the making of audio recordings will be permitted in the hearing room while the hearing is in session, without permission of the Commission.

9.      These rules may be modified, supplemented, amended or repealed during the course of the hearing in the discretion of the Commission, and within the powers conferred by the Waterfront Commission Act.

```
ADOPTED
BY THE
COMMISSION
ON
10/22/13
```

3