**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

NEW YORK SHIPPING ASSOCIATION, INC.,
on behalf of its members; METROPOLITAN MARINE
MAINTENANCE CONTRACTORS' ASSOCIATION, INC.,
on behalf of its members; INTERNATIONAL
LONGSHOREMEN'S ASSOCIATION, AFL-CIO, on behalf
of its members and affiliated local in the Port of New York
and New Jersey; LOCAL 1804-1, INTERNATIONAL
LONGSHOREMEN'S ASSOCIATION, AFL-CIO, on behalf
Of its members; and LOCAL 1814, INTERNATIONAL
LONGSHOREMEN'S ASSOCIATION, AFL-CIO, on behalf
of its members,

Plaintiffs,

     v.                                       Civ. Action No. 13-7115(SDW)(MCA)

WATERFRONT COMMISSION OF NEW YORK        *Motion Day: March 3, 2014*
HARBOR,                                   *Oral Argument Requested*

Defendant.

_____

_____

**REPLY MEMORANDUM OF LAW OF DEFENDANT WATERFRONT COMMISSION OF NEW YORK HARBOR IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

_____

Phoebe S. Sorial, General Counsel
Waterfront Commission of New York Harbor
39 Broadway – 4th Floor
New York, New York 10006
(212) 905-9202
psorial@wcnyh.gov

Of Counsel and On the Brief:
Phoebe S. Sorial, Esq.

TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………………………...1

LEGAL ARGUMENT……………………………………………………………….........3

I.   COUNT I - PLAINTIFFS HAVE FAILED TO SHOW AN
     INVALID AMENDMENT OF THE COMPACT………………………………………3

II.  COUNT II – PLAINTIFFS HAVE FAILED TO SHOW THE LACK
     OF STATUTORY AUTHORITY……………………………………………………8

III. COUNTS III & IV – PLAINTIFFS HAVE FAILED TO SHOW
     IMPROPER INTERFERENCE WITH COLLECTIVE BARGAINING
     RIGHTS OR A VIOLATION OF NATIONAL LABOR POLICY…………………………..13

IV.  COUNT V – PLAINTIFFS HAVE FAILED TO STATE A CLAIM
     UNDER THE PRIMARY AND EXCLUSIVE JURISDICTION DOCTRINE………………..15

V.   COUNT VI – PLAINTIFFS HAVE FAILED TO SHOW THAT
     DETERMINATION 35 IS ARBITRARY, CAPRICIOUS AND AN
     ABUSE OF DISCRETION………………………………………………………17

VI.  COUNT VII - PLAINTIFFS HAVE NOT ARTICULATED HOW
     DETERMINATION 35 LIMITS OR IMPROPERLY INTERFERES
     WITH THEIR COLLECTIVE BARGAINING RIGHTS…………………………………18

VII. COUNT VIII – PLAINTIFFS HAVE FAILED TO SHOW A VIOLATION
     OF SECTION 5-P…………………………………………………………19

VIII. COUNT IX - PLAINTIFFS HAVE FAILED TO SHOW IMPOSITION
      OF A CRIMINAL PENALTY…………………………………………………...20

IX.  COUNT X – PLAINTIFFS HAVE FAILED TO SHOW A VIOLATION
     OF DUE PROCESS RIGHTS………………………………………………...22

CONCLUSION……………………………………………………….....................23

TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ........................................................ ………..19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ........................... …………………………..19

*Bozzi v. Waterfront Commission of New York Harbor*,
1994 U.S. Dist. LEXIS 15664 (S.D.N.Y. 1994) ....................... ………………………………..passim

*B.P.O.E. Lodge No. 2043 of Brunswick et al. v. Keith H. Ingraham*…………………………........16, 17

*Buck v. Hampton Twp. Sch. Dist*., 452 F.3d 256 (3d Cir. 2006)…………………………………..2

*Cernadas v. The Waterfront Commission of New York Harbor*,
Index No. 22405/80, Sup. Ct. Sp. Term 1981) ... …………………………………………………6

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984)......................................................................................... 12

*City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256 (3d Cir. 1998)………………………..2

*Delaware Nation v. Pennsylvania*, 446 F.3d 410 (3d Cir. 2006)…………………………………..2

*Ford Motor Co. v. Edgewood Prop. Inc.*, 2008 WL 4559770 (D.N.J. Oct. 8, 2008)…………..2

*Global Naps, Inc. v. Bell Atl.-New Jersey, Inc.*, 287 F.Supp.2d 532, (D.N.J. 2003)……………..2

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)…………………………………..18

*Lum v. Bank of Am.*, 361 F.3d 217 (3d Cir. 2004)……………………………………………………..2

*Midnight Sessions Ltd. v. Philadelphia*, 945 F.2d 667 (3rd Cir. 1991)………………………….22

*NAACP v. FPC*, 425 U.S. 662 (1976)………………………………………………………...15,16

*National Organization of Women v. Waterfront Comm'n of N.Y. Harbor*,
460 F. Supp. 84 (S.D.N.Y 1978)………………………………………………………………….4

*National Organization of Women  v. Waterfront Comm'n of N.Y. Harbor*,
486 F. Supp. 317 (S.D.N.Y. 1979)………………………………………………………………..6

*New York Shipping Association, Inc., et al. v. Waterfront Comm'n of New York Harbor*,
Civ. A. No. 78-995 (D.N.J. June 1, 1978) ...................................................... …7

TABLE OF AUTHORITIES, CONT.

**Cases**

*Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*,
998 F.2d 1192 (3d Cir. 1993) .................................................................................... 2

*People v. Sutera*, 968 N.Y.S.2d 442 (N.Y. App. Div. 2013) ………………………………21

*State v. Murphy*, 36 N.J. 172 (1961) …………………………………………………..21

*Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568 (1985) …………………………..18

*Waterfront Commission of New York Harbor v. Sea Land Service, Inc.*,
764 F.2d 961 (3rd Cir. 1985) …………………………………………………………13, 14

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ………………………………………………… 18

**Statutes**

Waterfront Commission Act, N.J. STAT. ANN. § 32:23-1 et seq.,
N.Y. UNCONSOLIDATED LAWS § 9801 et seq. (McKinney). .................................................. passim

N.Y. Penal Law §175.00 (McKinney 2010). ................................................................. 21

N.Y. Penal Law § 175.35 (McKinney 2010) ................................................................. 21

## Court Rules

Fed. R. Civ. P. 12(b)(6) ......................................................................................... passim

Fed R. Civ. P. 12(c) ……………………………………………………………………….2

**Regulations**

Section 1.23 of the RULES AND REGULATIONS OF THE
WATERFRONT COMMISSION OF NEW YORK HARBOR ................................................... 21

Section 4.4(d) of the RULES AND REGULATIONS OF THE
WATERFRONT COMMISSION OF NEW YORK HARBOR ........................................... passim

P̲r̲e̲l̲i̲m̲i̲n̲a̲r̲y̲ S̲t̲a̲t̲e̲m̲e̲n̲t̲

Defendant Waterfront Commission of New York Harbor ("Commission" or "Defendant") submits this Reply Memorandum of Law in support of its Motion to Dismiss Plaintiffs' Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[1]  In opposition to the motion, the NYSA-ILA contend that it is "fundamentally flawed" because it "takes issue with the factual allegations in virtually every count and asks this Court to resolve these factual disputes in its favor."  (NYSA-ILA 1)  They contend that factual disputes cannot be resolved at this stage of the case, and that their factual allegations must be accepted as true. (NYSA-ILA 1)  As argued below, those "factual allegations" are actually just flawed legal conclusions.[2]

In support of its motion to dismiss, the Commission provided and/or referenced a transcript of the Commission's 1998 Public Hearing, Port Authority Press Releases, a New York State Division of Human Rights Complaint filed against several Plaintiffs in this action, articles from *The New York Times*, and the NYSA's 2012 Annual Report.  The NYSA-ILA contend that the Commission's inclusion of these documents is improper because they are not referenced in, or attached to, the Amended Complaint.  (NYSA-ILA 10-11).  Notably, in its opposition, the MMMCA does not challenge the Commission's use of these documents.

---

[1] Defendant submits this Memorandum in reply to the joint opposition brief filed by the NYSA, ILA and ILA locals, as well as the brief filed by the MMMCA.  Plaintiffs' briefs are designated herein as "NYSA-ILA" and "MMMCA."  Defendants' moving brief is designated as "WCNYH."

[2] For example, the NYSA-ILA argue that the Commission, ". . . devotes all its energies to an attempt to refute the factual allegation in Count I that the certification does not implement or effectuate one of the original purposes of the 1953 Compact." (NYSA-ILA 11)  This is not a factual allegation but rather, a legal conclusion.  Indeed, the only fact denied by the Commission in its Motion to Dismiss is the allegation that "[t]he Commission had no record and therefore no factual basis for its decision to reject the joint recommendation of NYSA and ILA."  (Am. Compl. ¶93)  While Plaintiffs are quick to cite to the Commission's denial of that statement, they fail to include the sentence that immediately follows, which cures the denial at issue:  "However, even accepting it as true for purposes of this motion, this issue is moot and need not be addressed herein since the Commission did not reject Plaintiffs' request."  (NYSA-ILA 1, *citing* WCNYH 32, fn 12)

1

Contrary to the NYSA-ILA's arguments, in evaluating a motion to dismiss, the court may consider not only "documents that are attached to or submitted with the complaint" but also "any matters incorporated by reference or integral to the claim, items subject to judicial notice, 'matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (brackets in original). "Public records" in this context include letter decisions of government agencies, published reports of administrative bodies, case dispositions,[3] documents pertaining to regulatory proceedings[4] and, as this Circuit's recent case makes clear, even the minutes from a Provincial Council of Pennsylvania meeting from 1742.[5]

The transcript of the Commission's public hearing is indisputably a "matter of public record" properly before the Court.[6]  Similarly, the Port Authority press release, which is freely available to the public from that bi-state agency's website, is a public record.  *Ford Motor Co. v. Edgewood Prop. Inc.*, 2008 WL 4559770, *5 (D.N.J. Oct. 8, 2008) (reliance on NJDEP administrative order proper because it was publicly accessible via the NJDEP's website).  The other documents at issue were referenced for background and context and need not be relied upon for the Commission's motion to prevail.  *Fed R. Civ. P.* 12(c); *Global Naps, Inc. v. Bell Atl.-New Jersey, Inc.*, 287 F.Supp.2d 532, 538 at n. 8 (D.N.J. 2003).

The Amended Complaint does not allege any facts upon which relief can be granted as to any of Plaintiffs' claims.  Both opposition briefs fail to address this deficiency.  In some instances, Plaintiffs rely on allegations that are not contained within the pleadings in an attempt to bolster their deficient complaint.  These allegations should be disregarded, and the Amended Complaint must be dismissed as a matter of law.

---

[3] *Pens. Ben. Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993).
[4] *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998).
[5] *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413-14 (3d Cir. 2006).
[6] Plaintiffs' reliance on *Lum v. Bank of Am.,* 361 F.3d 217, 22 n. 3 (3d Cir. 2004) is unpersuasive because the transcript involved therein was not a "public record" but rather the transcript of prior deposition testimony.  *Id.*

2

**LEGAL ARGUMENT**

**I.   COUNT I - PLAINTIFFS HAVE FAILED TO SHOW AN INVALID AMENDMENT OF THE COMPACT**

The Parties generally agree that the certification provision in 5-p and in Rule 4.4(d) is a valid amendment of the Compact, and was therefore made with Congressional consent, if it implements or furthers the purposes of the original Compact. Plaintiffs have failed to demonstrate that the certification provision is not in furtherance of the purposes of the Act.

This issue was extensively discussed in both briefs. The Commission will first address the NYSA-ILA's arguments. As it must, their analysis first begins with the very first paragraph of the Compact, the Findings and Declarations as articulated by the legislatures in 1953. They admit that the specific evils that the Compact is designed to eradicate are set forth within that paragraph, which include, ". . . the lack of any systematic method of hiring, the lack of adequate information as to the availability of employment, corrupt hiring practices. . ." (NYSA-ILA 16) But then, in a leap that totally defies all logic and legal reasoning, they insist that this does not include fair and non-discriminatory hiring based on equal employment opportunity laws because, "[n]owhere in the Findings and Declarations or in any operative provisions of the 1953 Compact is there any mention of diversity, discrimination in employment or hiring on the basis of race, color, national origin or sex or that one of the purposes of the Compact was to combat these concerns." (*Id.* 17) The NYSA-ILA even go so far as to limit the term "corrupt hiring practices" to include only kickbacks, and connections used by hiring bosses 60 years ago when hiring at the daily shape ups. (*Id.* 16) They argue that the certification provision of Section 5-p, which requires employers to certify that their selection was made in a fair and non-discriminatory manner, is beyond the purview of the Compact and is therefore unconstitutional.[7]

---

[7] The MMMCA also advances the additional argument that the regulation the employment of "A" registrants was never a purpose of the Compact, because the original definition of "longshoreman" did not encompass "A" registrants. (MMMCA 7, 15) In 1953, the legislatures found that that "the

3

This reasoning does not only defy common sense, but also the extensive case law propounded by the Commission in its moving papers.  In a futile attempt to overcome this, the NYSA-ILA cite to cases that were decided shortly after the Compact was enacted that are totally silent on the issue, and advance the flawed notion that such silence denotes affirmative support of their proposition that fair hiring in accordance with equal employment opportunity laws is beyond the purview of the Compact.  However, absence of evidence is not evidence of absence.

In perhaps what is their most outlandish argument, they contend that "[t]he Commission itself has already confirmed this fact," and then proceed to extensively quote from a 1978 affidavit submitted by the Commission's then Executive Director, Leonard Newman, in connection with the matter entitled *National Organization of Women v. Waterfront Comm'n of N.Y. Harbor*, 460 F. Supp. 84 (S.D.N.Y Oct. 30, 1978).  That affidavit was neither quoted in any court opinion nor attached to Plaintiffs' opposition papers in this matter.[8]  The NYSA-ILA contend that "[w]hat is telling in Mr. Newman's affidavit is what he did not say.  In an employment case where the statement would be highly relevant, he did not say that the Commission's mission as set forth in the purposes of the Compact was the elimination of racial, ethnic, or sex discrimination in hiring or employment on the waterfront."  (18)

A review of that affidavit reveals that there is an entire section entitled, "The Commission's Fight Against Discrimination on the Waterfront," in which Mr. Newman stated:

> . . .  the Commission has always promoted fair employment practices on the
> waterfront . . . each time the Commission added workers, the Commission gave

---

occupations of longshoremen" were affected with a public interest requiring their regulation. N.J.S.A. § 32:23-5(4)  The regulation of "A" registrants, who are longshoremen, is clearly within the purposes of the Compact, regardless of when they were included in the definition of longshoremen.  The Commission is well within its statutory authority to regulate their employment.

[8] It is incredible that Plaintiffs vehemently object to the Commission's submission of documents in connection with its Motion to Dismiss, but then proceed to simply quote from an affidavit that was filed in a completely different matter over thirty-five years ago.  While the Commission would be well within its rights to object to the Court's consideration of this affidavit, we decline to do so.

widespread advance notice of such opening specifically to minority organizations. As a result of this policy by the Commission and also as a result of processing applications for new jobs in the order in which they were received, blacks and Hispanics in Port Newark and Port Elizabeth . . . comprise, by far, a higher percentage of the work force than is true elsewhere in the Port.

At one time, there were hardly any black or Hispanic checkers in the entire Port. When blacks were denied membership in the checker union and complained to the Waterfront Commission, the Commission conducted an investigation which showed that the checker union had taken in new white members after refusing blacks upon the pretense that membership was closed.  The Commission made this evidence available to the New York Human Rights Division and thereupon the checker union admitted to membership the blacks whom the Commission had registered as checkers but who had been denied membership by the checker union.  Since then, the checker union has been open to blacks and Hispanics.

Also, the Commission has promulgated Regulations requiring all job openings be advertised port-wide and that all hiring be done in accordance with seniority.  As a result, black and Hispanics learn of job vacancies and are able to assert their seniority rights to obtain the better jobs.  Further, the Commission has instituted disciplinary proceedings against employers and hiring agents who bypass blacks and Hispanics in the hiring and, in addition, the Commission has issued a directive warning all employers and hiring agents that they could lose their licenses for practicing discrimination.

Mr. Newman concluded, "[t]**he Commission, as always, will continue to be vigilant against discrimination in waterfront employment**." *See* Affidavit of Leonard Newman dated September 19, 1978, ¶¶22-24, 28 attached to the Certification of Phoebe S. Sorial, Esq.["SORIAL CERTIFICATION"], as Exhibit A (Emphasis added).  The NYSA-ILA's lack of candor as to the contents of this affidavit is inexcusable, and their failure to provide it to this Honorable Court can be for no other reason than its devastating impact on their claims.[9]  Notably, based on this affidavit the court subsequently noted that, "[w]e are advised by the Commission that it has used its authority over hiring agents to deny licenses to any who discriminated in employment on grounds of color,

---

[9] This is particularly inexcusable in light of Plaintiffs' unfounded accusation that the Commission engaged in "sharp practices" because it only attached relevant portions of a 249-page transcript, in accordance with the court rules which provide that only relevant portions should be attached.

race, creed or sex. *NOW v. Waterfront Comm'n of N.Y. Harbor*, 486 F. Supp. 317, 319 (S.D.N.Y. 1979)  This subsequent decision was not mentioned by Plaintiffs.

As set forth in the Commission's moving brief, *Cernadas v. The Waterfront Comm'n of N.Y. Harbor*, Index No. 22405/80, Sup. Ct. Sp. Term 1981)(aff'd), which was decided two years after the *NOW* case, *supra*, completely undermines Plaintiffs' argument that discriminatory hiring does not fall within the purview of the Act.  The NYSA-ILA attempt to attack the Commission's reliance on *Cernades* (without actually referring to the case) is nothing short of bizarre.  First, they conspiratorially contend that the Commission has gone "to great lengths to doctor a quote from a 1981 lower court decision in New York to create the false impression that the elimination of discrimination was one of the original purposes of the Compact."[10]  (NYSA-ILA 14)  Then, they erroneously contend that "[a]ctually, the Court was not addressing the Act's Findings and Declarations at all."  (*Id.*)  The excerpt below completely negates this:

> In 1953, the States of New York and New Jersey entered into an agreement (the compact) to regulate inter alia labor practices in the Port of New York upon the joint finding and declaration that "* * * the condition under which waterfront labor is employed * * * are depressing and degrading to such labor, resulting from the lack of any systematic method of hiring, * * * [and] corrupt hiring practices * * * ; * * * that as a result waterfront laborers suffer from irregularity of employment, fear and insecurity, * * * exploitation and extortion as the price of securing employment and loss of respect for the law."  (McKinney's Unconsolidated Laws S 9802; emphasis supplied).

*Cernadas, supra* (alteration marks and emphasis in original).  The court then noted that, to combat these conditions, the Commission promulgated certain regulations which were designed to effectuate the purposes of the Act, as amended and supplemented, and to prevent the circumvention and evasion thereof.  (NYSA-ILA 15)  The court specifically stated that these regulations are

---

[10] Plaintiffs accuse the Commission of deliberately failing to include quotations from that decision, and point out that the cited language did not include ellipsis marks to indicate omissions, calling this a "deception."  (NYSA-ILA 14)  A review of the quoted language indicates that there are, in fact, ellipses.  (WCNYH 21)  Plaintiffs also apparently missed the phrase "internal citations and alteration marks omitted" that directly followed.  (*Id.*)

designed to further the public policies of the states of New York and New Jersey by providing fair and equal employment opportunities, and by establishing a systematic method of hiring.  (*Id.*) Despite Plaintiffs' best efforts, this language completely supports the Commission's arguments.

The NYSA-ILA's foray into folly continues, as they question the significance of the NYSA's statement to Governor Pataki in support of the 1999 Section 5-p legislation, and contend that the Commission has failed to "explain how something said in 1999 sheds light on what the purposes were of a Compact enacted 46 years earlier." (NYSA-ILA 13)  They argue that their support does not immunize the provision at issue from a constitutional challenge.   What is significant about that letter is that the NYSA unreservedly supported the certification requirement specifically because it would "assure that the persons sponsored will include a number of women, Blacks and Hispanics," inasmuch as applications were no longer being considered on a first-come-first served basis.  The NYSA admitted that without that requirement, there was no guarantee that any members of those groups would be added to the workforce.  That letter undisputedly illustrates that the certification language is necessary to combat conditions that were enumerated in the Act.[11]

The MMMCA's arguments are also unpersuasive.  Like the NYSA-ILA, it contends that while abuses are listed in the legislative findings, "fairness, non-discrimination, and consistency with equal employment opportunity laws are not on the list."  (MMMCA 24) As argued above, this argument is without merit.  However, the MMMCA goes one step further.  In what may be its most self-defeating argument, it cites to *N.Y. Shipping Ass'n, Inc. v. Waterfront Comm'n of N.Y. Harbor*, No. 78-995 (D.N.J. 1978) *aff'd* 582 F.2d 1275 (3d Cir. 1978)("*NYSA*") and contends:

> *NYSA* shows there is no relationship between *NYSA* and the Commission's new agenda.  *NYSA* holds that "one of the primary goals" of the power given to the Commission was "the regulation of the *size* of the waterfront labor force for the

---

[11] On page 19 of its brief, the MMMCA argues that the Commission has not shown that, pursuant to Article IV, Section 7 of the Act (which grants the Commission its rule-making authority), the amendment to Rule 4.4(d) effectuates the purposes of the Compact and that it was necessary.  The NYSA's letter and the case law set forth above squarely address that issue.

> purpose of stabilizing the employment of workers through the prevention of an excess number of employees in the register." *Id.* (emphasis added). Thus the Compact as described in NYSA and the purpose behind the Challenged Amendment are not related to each other. The Compact is directed at controlling the size of the workforce. The Challenged Amendment is directed at controlling the *composition* of the workforce, regardless of its size.

(MMMCA 11) This argument is completely negated by the court's finding that: "[I]n vesting the Commission with sole power control the **size and character** of the labor force, Congress specially sanctioned the Waterfront Act, with full knowledge and intention that its specific provisions would override the general polices of federal labor rights if the two came in conflict." *NYSA* at 10. Plaintiffs have clearly failed to state a claim and Count I must therefore be dismissed.

## II.  COUNT II – PLAINTIFFS HAVE FAILED TO SHOW THE LACK OF STATUTORY AUTHORITY

As a preliminary matter, the NYSA-ILA take issue with the fact that the Commission has not turned over discovery, and urge the Court not to rule until the Commission produces documents relating to the amendment to Rule 4.4(d) and Determination 35. On this point, the procedural posture of this case is important. The Commission has not yet filed an Answer, and no scheduling order has been entered. The NYSA-ILA's suggestion that the Commission's Motion to Dismiss is "a rush to judgment and at worst an attempt to conceal the factual record to the extent that there is one" is inappropriate and false. (NYSA-ILA 19, fn 7) Plaintiffs – not the Commission – bear the responsibility for their failure to sufficiently plead their claims.

Plaintiffs do not deny that under the current framework of hiring "A" registrant mechanics, the employers' selection and sponsorship of individuals is only from the applicants supplied to them by the union. Indeed, this was confirmed by the three terminal operators who submitted affidavits in support of Plaintiffs' motion for preliminary injunction, who indicated that over the years, whenever their respective company needed new maintenance and repair employees, "it would notify Local 1804-1 and in accordance with the MMMCA-ILA CBA the local would refer applicants from which [the company] would select the individuals that had the necessary qualifications for the job."

(Affidavits of John D. Atkins at ¶8 [ECF 17-5]; James Pelliccio ¶6 [ECF 17-4]; Anthony Ray ¶6 [ECF 17-2])[12]  As the Commission has pointed out before, the NYSA and MMMCA have completely surrendered to the ILA the exclusive right to initially recruit and select those individuals that are referred to the employers to be considered for employment as "A" registrant mechanics.

Plaintiffs deny that this promotes conditions enumerated under the Act (e.g., the lack of a systematic method of hiring, irregularity of employment, the lack of adequate information as to the availability of employment, and the selection of employees by those who are neither responsive nor responsible to the employers), and insist that it does not bear any resemblance to the historical "shape-up."[13]  (NYSA-ILA 20)  They limit the term "shape-up" to an antiquated system of daily hiring of unskilled labor in 1953, by different employers day-to-day for limited periods of time. (*Id.*)  They argue that that current system, which is based on the union-referrals, is distinguishable.

This narrow view is unsupported by the New York State Crime Commission Report, which described the shape-up as a hiring system in which employers were compelled to accept those individuals sent to them by the hiring foreman, who had "the absolute right to use any method he desire[d] and to employ anyone he wishe[d]."  (FOURTH REPORT OF THE NEW YORK STATE CRIME COMMISSION, New York State Leg.Doc.No. 70)(1953))  This is essentially the case here, where the employers' selection and sponsorship of individuals is only from those applicants supplied to them by the ILA, and where the ILA has the absolute right to use any method it desires in doing so.

Notably, the Commission is not opposed to a union-referral system, as confirmed by its acceptance of the NYSA-ILA's Hiring Plan for deep-sea longshoremen (in which a percentage of referrals come from the ILA)  This issue is that according to the hiring plan for "A" registrants, **all**

---

[12] Filed by Plaintiffs on December 11, 2013, in support of their Motion for Preliminary Injunction.

[13] Despite the extensive discussion on pages 22-24 of  the Commission's moving brief directly correlating Plaintiffs' hiring practices to the shape-up, the MMMCA contends that "the Commission's Motion does not even try to show that the shape up is even going on."(MMMCA 24)

individuals must come from the union. It is for this reason that the Commission amended Rule 4.4(d), as a means by which to ensure that employers will remain diligent, and accountable, in ensuring that the hiring of "A" registrants is done in a fair and non-discriminatory manner.

Plaintiffs contend that the amendment to Rule 4.4(d) is legally deficient because the certification requirement is derived from Section 5-p and that entire section only applies to the deep-sea register and therefore, not to "A" registrants. (NYSA-ILA 19)  As they do in the Amended Complaint, Plaintiffs cite to *Bozzi v. Waterfront Comm'n of N.Y. Harbor,* 1994 U.S. Dist. LEXIS 15664 at *6 (S.D.N.Y. 1994) for the proposition that the Commission has interpreted Section 5-p as applying only to the deep-sea longshoremen's register, not the "A" register. They claim that the Commission has "consistently denied that 5-p, as amended, gave it authority to regulate the hiring of M&R employees." (MMMCA 9, 13)  Citing the doctrine of judicial estoppel, MMMCA contends that the Commission's "victory" in *Bozzi* should prevent it from "repudiating its 44-year long position that the 1969 Amendment to 5-p did not apply to M&R employees." (*Id.* 14)

To overcome these arguments, it is important to first closely examine "Section 5-p," or the "closed register statute," which is broken down into six separate subsections:

- Section 5-p(1):  Provides for the closing of the longshoremen's register and designates the procedural manner by which the register may be opened.  *See* N.J.S.A. 32:23-114(1); N.Y. UNCONSOL. 9920(1)

- Section 5-p(2): Enumerates various standards that the Commission must observe in administering the provisions of the opening of the longshoremen's register.  *Id.* at §32:23-114(2); *Id.* at §9920(2)

- Section 5-p(3):  Requires the Commission's opening of the longshoremen's register to be made upon a record, and provides for judicial review of that record.   *Id.* at §32:23-114(3); *Id.* at §9920(3)

- Section 5-p(4): Contains the provision that requires employers who are sponsoring individuals for inclusion in the longshoremen's register to certify that the selection of persons sponsored was made in a fair and non-discriminatory basis in accordance with the requirements of the laws of the states of New York and New Jersey dealing with equal employment opportunities. *Id.* at §32:23-114(4); *Id.* at §9920(4)

- Section 5-p(5):  Provides that, "**[n]otwithstanding any other provision of this act, the commission may include in the longshoremen's register under such terms and conditions as the commission may prescribe**" seven different categories of individuals. The second category, found at Section 5-p(5)(b), are "A" registrants. *Id.* (Emphasis added) *Id.* at §32:23-114(5); *Id.* at §9920(5)

- Section 5-p(6): Provides that the Commission may include in the longshoremen's register certain longshoremen or checkers who at the time of the 5-p amendment were temporarily included to meet special and emergency needs.  *Id.* at §32:23-114(6); *Id.* at §9920(6)

Under this backdrop, it is clear that Plaintiffs have misconstrued the Commission's arguments as well as the Court's holding in *Bozzi*.  The Commission is not, as the MMMCA contends, "repudiating" on any position.  It has consistently interpreted the closed register statute as applying only to the deep sea longshoremen's register, and has consistently maintained that persons who have been and are being added to the longshoremen's register pursuant to the 1969 amendments to the Act should be excluded from the closed register provisions of Section-5p.  *See Bozzi*, supra at *21  This means that the deep sea register does not have to be open in order for "A" registrants to be admitted to the longshoremen's register and, at the time the *Bozzi* case was decided, it also meant that applications for "A" registrants did not have to be accepted on a first come, first-served basis.  *See Bozzi,* supra at *25  It also meant that "A" registrants who had been added to the longshoremen's register pursuant to 5-p(5)(b) could not parlay their way from the "A" register into the deep-sea register, as the plaintiffs in *Bozzi* were trying to do.  Indeed, after extensively reviewing the Act's legislative history, the *Bozzi* court accepted the Commission's contention that the provision above relating to "A" registrants in Section 5-p was a housekeeping measure, designed "simply to clarify that the practice of registering the '1969 amendment' longshoremen without regard to the closed register was to continue." *Bozzi*, *supra* at *11

At the end of the day, one undisputable point remains:  Section 5-p(5)(b) of the Act unequivocally provides that the Commission may include "A" registrants in the longshoremen's

register (meaning, as set forth in *Bozzi*, the "A" register) "under such terms and conditions as the commission may prescribe."  While Plaintiffs have attacked the Commission's reliance on, and interpretation of, this provision, they have not provided any other reasonable interpretation or meaning.  Nor have they shown that the Commission's interpretation is arbitrary and capricious.  "A" registrants are exempt from the closed register statute; they are not, however, impervious to the terms and conditions that the Commission deems necessary for their inclusion to the longshoremen's register.

The NYSA-ILA refute the Commission's argument that Section 5-p(5)(b) confers the appropriate authority to promulgate the regulation that is at issue, and contend that "[t]he resolution never discusses, let alone bases its finding on, section 5-p(5)(b)."  (NYSA-ILA 22)  A review of the Resolution reveals that the Commission specifically discussed that provision in the sixth paragraph.. (Compl. – Exh. 5 ¶5)  Plaintiffs contend that the Commission "conveniently fails to tell the court where they are to be included," and contends that the term "longshoremen's register" in that section refers to the deep-sea register.  (NYSA-ILA 22)  As set forth above, this argument was already advanced by the *Bozzi* plaintiffs and was squarely rejected by the court.

The NYSA-ILA contend that Rule 4.4(d) is not entitled to deference under *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837 (1984), because it allegedly provided no notice and opportunity for comment thereon, and because the Commission "revised a 45-year old rule with no explanation of why it was doing so."[14]  (NYSA-ILA 21)  These arguments must fail for two reasons.  First, as argued in Point X below, more than adequate notice was provided, as well as the opportunity to comment.  Second, as argued in Point I, above, the Resolution clearly lays out the reasons as to why the amendment was necessary.  Even if it had not (which is denied), the NYSA's 1999 letter provides more than adequate justification as to why the amendment is necessary.

---

[14] The MMMCA makes no attempt to even address this seminal case.

### III.   COUNTS III & IV – PLAINTIFFS HAVE FAILED TO SHOW IMPROPER INTERFERENCE WITH COLLECTIVE BARGAINING RIGHTS OR A VIOLATION OF NATIONAL LABOR POLICY

Plaintiffs summarily reject any degree of interference with their collective bargaining agreements even when, as in this case, those agreements are in conflict with the Act.  The MMMCA argues that the Commission is prohibited from taking "any act . . .that would limit in any way the ability of labor and management to arrive at a mutually satisfactory method for the selection of employees in the bargaining unit."  (MMMCA 28)  It further contends that "[t]he Compact treats as inviolable whatever method the bargaining parties arrive at.  If the bargaining is lawful under the National Labor Relations Act, the selection method from it is lawful, full stop."  (MMMCA 28)  While the MMMCA makes no mention of *Waterfront Comm'n of N.Y. Harbor v. Sea Land Service, Inc.* 764 F. 2d 961 (3rd Cir. 1985), the NYSA-ILA rely extensively on that case on in support of their argument that no restriction may be placed on their collectively bargained rights.

In the *Sea Land* case, the Third Circuit proposed a modification to a Commission order in order to reconcile a conflict between the Commission's regulation provision and an existing bargaining agreement.  While the ILA-NYSA purport to "sum up" the court's holding on page 25 of their brief, they omit the second sentence (in bold below) and selectively quote only the sentence before and the language after it:

> Although this modification may appear at first glance to go beyond the literal language of the statute, in fact it ensures that the district court's order is faithful to the requirement that no restriction be placed on current collectively-bargained rights. **The order, as altered, maintains both the Commission's supervisory role regarding practices that might lead to corruption and the union's collectively-bargained procedure**.

*Id.* (Emphasis added)  That language completely undercuts Plaintiffs' unconditional stance on collective bargaining, and their vehement attempts to remove themselves from the Commission's supervisory role.

The Commission does not disagree that Plaintiffs' collective bargaining rights are safeguarded under Article XV.  However, those rights are safeguarded only to the extent that

13

collectively bargained provisions are not conflict with the Act.  For example, even Plaintiffs would have to agree that they could not collectively bargain to return to the shape – something that is specifically banned by the Compact.  Indeed, as noted by the court in *Sea Land*: "Article XV of the Compact states that it 'is not designed and shall not be construed to limited in any way' any rights to organize, strike, or bargain collectively.  Specifically, it guarantees that hiring procedures will not be displaced **where they comport with the Compact**." *Id.* at 963 (Emphasis added) Plaintiffs completely ignore this critical distinction.  In this instance, as argued in Point III above, the hiring provisions at issue promote proscribed conditions that are specifically enumerated in the Act.

Plaintiffs' attempts to challenge the Commission's reliance on *NYSA, supra,* are unpersuasive.  The NYSA-ILA completely disregard the court's extensive discussion regarding the Commission authority to infringe upon collective bargaining functions and instead, focus only on the court's observation that the challenged determination in that case did not attempt to dictate the manner in which employees are to be selected for employment.  (NYSA-ILA 23)  Then, they selectively cite to the Act's legislative findings, which granted the industry "freedom of choice in the selection of employees."  (*Id.*)  A complete reading of that passage just further supports the Commission's position: "The employer would have freedom of choice in the selection of employees at such centers but there would be no interference with the normal and proper hiring practices, including the gang or unit system, or procedures established under collective bargaining agreements **not inconsistent with the requirements of the Compact**."  Legis. Sum, NYSA-ILA App. A (ECF 58-1) Again, Plaintiffs cannot overcome the hurdle that their negotiated hiring practices cannot be inconsistent with the Act.

Without actually discussing the case, the MMMCA boldly suggests that this Honorable District's decision, which was affirmed by the Third Circuit, "no longer reflects the state of law" because the court "assumed" that Section 5-p could assign to the Commission purposes other than

14

those embedded in the original Compact.  (MMMCA 34)  An actual reading of the case reveals that no such assumption was made.  The issue there was not, as the MMMCA posits, the *purpose* of the challenged determination but rather, the specific *methods* proposed by the Commission in that determination.  The court held that "[t]he fact that the methods employed by the Commission in so effectuating the compact are not specifically authorized by §5-p does not render Determination 15 outside the scope of authority granted by the Act."  *Id.* at 9.  Plaintiffs have failed to make a showing to the contrary and Count IV must therefore be dismissed.

### IV.   COUNT V – PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER THE PRIMARY AND EXCLUSIVE JURISDICTION DOCTRINE

The NYSA-ILA do not deny that they have improperly invoked the doctrine of primary jurisdiction in Count V of the Amended Complaint.  Nor do they refute that the doctrine does not focus on the interplay between administrative agencies but rather, between courts and agencies.  That doctrine is concerned with allowing agencies to exercise discretion in cases raising issues of fact not within the conventional experience of judges or courts, is inapplicable here.  Plaintiffs do not address the cases cited by the Commission in its moving brief, and instead completely side step the issue by contending, "[i]n the Commission's view, just because it is not a court, it can encroach upon the jurisdiction of those agencies that occupy this field of law."  (NYSA-ILA 26)  For this reason alone, they have failed to state a claim and Count V should be dismissed.

The NYSA-ILA contend that the Commission does not have the authority to deny or revoke a stevedore's license in the public interest even if it finds that the stevedore engaged in discriminatory conduct and therefore lacked the "good character and integrity" that a stevedore is required to have under the Act in order to be licensed.  They rely entirely on one case, *NAACP v. FPC*, 425 U.S. 662 (1976), in support of their argument that the Commission has inappropriately become "involved in the employment-discrimination realm without having statutory authority to do so."  (NYSA-ILA 26)  A review of that case reveals that it is inapplicable to this matter.

There, the issue was whether the Federal Power Commission (FPC) had the authority to issue a rule requiring equal employment opportunity and nondiscrimination in the employment practices of its regulatees.  *Id.* The FPC had refused the request of the NAACP to do so, holding that it had no jurisdiction because its purposes were "economic regulation of entrepreneurs engaged in resource development" and therefore, lacked the necessary nexus between those aspects of its economic regulatory activities and the employment procedures of the utilities that it regulated.  *Id.* at 663.  In affirming the FPC's decision, the Supreme Court examined the scope of its authority and the purpose for which it was adopted and stated:

> the parties point to nothing in the Acts or their legislative histories to indicate that the elimination of employment discrimination was one of the purposes that Congress had in mind when it enacted this legislation.  The use of the words "public interest" in the Gas and Power Acts is not a directive to the Commission to seek to eradicate discrimination, but, rather, is a charge to promote the orderly production of plentiful supplies of electric energy and natural gas at just and reasonable rates.

*Id.* at 670.  Plaintiffs contend that the Commission's use of the certification at issue is "directly contrary to the Supreme Court's opinion in NAACP."  (NYSA-ILA 27)

This argument must fail for several reasons.  First, unlike the mission of the FPC, the eradication of corrupt employment practices in the Port is one of the foremost reasons for which this Commission was created.  The notion that the Commission cannot require the employers it regulates to certify that the selection of sponsored employees was made in a fair and non-discriminatory manner is, as argued extensively above, totally unsupportable.  Second, the Commission – which is specifically charged by the Act with determining whether a stevedore meets the "good character and integrity" standard – is well within its statutory authority to seek appropriate censure against any stevedore that it deems to be engaging in discriminatory hiring practices.  *See, e.g., B.P.O.E. Lodge No. 2043 of Brunswick et al. v. Keith H. Ingraham*, 297 A.2d 60 (1972)(racial discrimination by

social lodges was found by State Liquor Commission to be indicative of "bad moral character," warranting denial of their liquor licenses)

Without any legal citation, the NYSA-ILA contend that the Act sets specific factors that the Commission must consider in making that determination, and a possible violation of one of the employment-discrimination laws is not one of them.  (NYSA-ILA 27)  This argument is directly refuted by the Act.  The Commission may deny or revoke a stevedore's license if the Commission is not satisfied that the applicant and all pertinent members, officers and stockholders possess good character and integrity.  N.J.S.A. §§ 32:23-21(3)(b) & 32:23-24(a); N.Y. UNCONSOL. §§ 9821(3)(b) & 9824(a).    Plaintiffs' apparent suggestion that a stevedore engaging in discriminatory hiring practices, or that acquiesces to a system that promotes such practices, can somehow still possess good character and integrity is completely untenable.    Count V must therefore be dismissed for failure to state a claim.

## V. COUNT VI – PLAINTIFFS HAVE FAILED TO SHOW THAT DETERMINATION 35 IS ARBITRARY, CAPRICIOUS AND AN ABUSE OF DISCRETION

In their Amended Complaint, the NYSA-ILA allege that Determination 35 "provides no basis for reducing the number of longshoremen and checkers that will be hired by NYSA's members."  (AC, Count VI)  They reject the Commission's contention that it has, in fact, determined that that number of longshoremen and checkers requested by Plaintiffs is appropriate, and engage in a discussion regarding the resolution of ambiguities through the examination of "prefatory provisions" and "operative decretal orders."  They contend that judicial review of the underlying record is necessary, to determine if the Commission's "refusal" for granting their request in total is arbitrary and capricious and without factual support.

Count VI must be dismissed for several reasons.  First, since the Commission did not reduce the number of longshoremen to be hired by Plaintiffs, it was not arbitrary and capricious.  Second,

Plaintiffs have not pled any particularized injury.[15]  Determination 35 was issued on December 3, 2013.  The Amended Complaint, which was filed over a month later, does not allege any facts that would support a finding that the Commission did, in fact, refuse Plaintiffs' request and that Plaintiffs were harmed as a result.[16]  Finally, judicial review in this instance appropriately lies with state, not federal courts.  Section 5-p(3) provides that judicial review proceedings may be instituted "in either state in the manner provided by the law of such state for review of the final decision or action of administrative agencies of each state, provided, however, that such proceeding shall be decided directly by the appellate division as the court of first instance (to which the proceeding shall be transferred by order of transfer by the supreme court in the state of New York or in the state of New Jersey by notice of appeal from the commission's determination)."  N.J.S.A. 32:23-114(3); N.Y. UNCONSOL. 9920(3) For this reason and those set forth above, Count VI should be dismissed.

## VI.  COUNT VII - PLAINTIFFS HAVE NOT ARTICULATED HOW DETERMINATION 35 LIMITS OR IMPROPERLY INTERFERES WITH THEIR COLLECTIVE BARGAINING RIGHTS

The NYSA-ILA concede that they simply list the four orders from Determination 35 that allegedly interfere with their collective bargaining rights. (NYSA-ILA 30) In an attempt to explain how those orders interfere with their rights, they cite to ¶99 of the Amended Complaint, which

---

[15] Plaintiffs do not establish any injury from the Commission's Determination that is "actual or imminent" rather than "conjectural or hypothetical."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).  Further, they do not present an injury that is "certainly impending to constitute injury in fact."  *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (quotation omitted).  Therefore, in addition to all of the arguments set forth in Defendant's Motion to Dismiss, Count VII should be dismissed because Plaintiffs do not satisfy the basic constitutional prerequisite – in particular, standing to sue – to invoke federal jurisdiction.  Moreover, even if this Court were to find that Determination 35 may pose future harm to Plaintiffs (which is denied) it would be improper for the court to resolve the merits of the case now, because any injury that may occur to Plaintiffs in the future is merely speculative.  This case instead involves "contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985).  This issue, therefore, is also not ripe for judicial review.

[16] Notably, even though the NYSA-ILA's opposition brief – filed two and a half months after the issuance of Determination 35 – improperly alleges new facts pertaining to other counts, Plaintiffs have not done so with regard to this issue.

simply alleges that "[t]he provisions in Determination 35 dealing with interpretation, application, and implementation of the collectively bargained Hiring Plan, the assignment of seniority, and the formulation of hiring rights and priorities are matters of collective bargaining, which Article XV of the Compact prohibits the Commission from limiting in any way."  What is missing is a recital of how, or in what manner, the orders limit their rights.  They fail to seek any entitlement to relief, and have not requested any legal remedy or redress. On this basis alone, Count VII should be dismissed.

In a flawed effort to cure their deficient pleading, the NYSA-ILA then proceed to introduce new factual allegations that are not set forth in the Amended Complaint.  (NYSA-ILA 33)  They allege that Determination 35 fails to assign the appropriate seniority level because it assigns "V" seniority to those hired pursuant to the Determination, even though checkers currently employed have already been assigned seniority levels "V" through "Y."  (*Id.*)  Plaintiffs then oddly remark that "even Cookie Monster would know that the Commission's determination actually gives new checkers higher seniority than checkers who are already in the workforce." [17] (*Id.*)  Frankly, it does not matter if the entire Sesame Street cast knows that fact.  Plaintiffs still need to allege a particular injury in their Amended Complaint.  Their pleading does not contain sufficient factual matter which, if accepted as true, states "a claim to relief that is plausible on its face."  *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A dismissal of Count VII is therefore warranted.

## VII.    COUNT VIII – PLAINTIFFS HAVE FAILED TO SHOW A VIOLATION OF SECTION 5-P

The NYSA-ILA allege that the Commission is exceeding its statutory authority by requiring their Contract Board representatives to submit a certification that the selection of an individual

---

[17] Prior to the issuance of Determination 35, the Parties had agreed that longshoremen would be assigned "V" seniority, and checkers "Z" seniority.  On February 25, 2014, shortly after receiving the NYSA/ILA's brief and becoming aware of its scriveners' error, it issued a Resolution Amending Determination 35 *nunc pro tunc*, to ensure that checkers receive "Z" seniority.  In any event, Plaintiffs' newly alleged factual allegations regarding seniority should be disregarded.

sponsored for employment was done in a fair and nondiscriminatory manner.  They contend that "[u]nder the Compact, the Commission has jurisdiction over pier superintendents, hiring agents, longshoremen, and port watchmen only."[18]  (NYSA-ILA 34)  They contend that the Compact does not grant the Commission jurisdiction over the NYSA or ILA, just their members.[19]  (*Id.*)

In so arguing, the NYSA-ILA disregard the critical provision of the Act, that when the Commission determines to accept applications for acceptance for inclusion in the longshoremen's register on its own initiative, as it did here, "such acceptance shall be accomplished in such manner deemed appropriate by the Commission."  N.J.S.A. 32:23-114; N.Y. UNCONSOL. 9920.  In this instance, the Commission agreed that it could be done in the manner proposed by the NYSA-ILA Contract Board.  According to the terms of their new Hiring Plan, they – along with the terminal operators – will do the recruiting and hiring.  (AC – Exh. 1)  New hires are interviewed and evaluated by a screening committee consisting of the terminal operator employer, ILA and NYSA representatives. (*Id.*)  The Commission is statutorily empowered to ensure that the implementation of the Hiring Plan is not done in a manner that will circumvent the purposes of the Act.  Since the Contract Board members are exclusively recruiting, referring, interviewing and selecting the new hires, their certification that those individuals were selected in a fair and nondiscriminatory basis is necessary.  Plaintiffs' claims must therefore be dismissed.

## VIII.   COUNT IX - PLAINTIFFS HAVE FAILED TO SHOW IMPOSITION OF A CRIMINAL PENALTY

Plaintiffs have failed to argue that it is improper for the Commission to provide them with fair warning that the filing of a false sponsorship letter is punishable by law.  The NYSA-ILA contend that there is nothing in Section 5-p authorizing what they have characterized as a "public service message," and question, "[i]f the Commission truly intended it to be just a warning, why

---

[18] Missing from this list are stevedores, over whom the Commission undoubtedly has jurisdiction, and who are members of the NYSA.

[19] Notably, for two decades the NYSA-ILA Labor Board submitted the certifications with no issue.

does that same order require all sponsorship letters be filed with the Commission's office in New York City, rather than with its office in New Jersey?  Clearly the Commission was seeking to obtain a basis for applying the New York law to entities located in New Jersey."  (NYSA-ILA 35, fn 12)  This question was squarely addressed in the Commission's Motion to Dismiss:

> Section 1.23 of the Commission's Rules and Regulations provides that the Commission's records are to be made public, and available for inspection, at its main office located at 39 Broadway, New York, New York.  Pursuant to §1.23(b), requests for access to those records are to be submitted to the Commission's Secretary, also at this address.  For this reason, in accordance with the Commission's longstanding practice, Determination 35 provides that the sponsorship letters at issue are to be filed in the Commission's New York office.  If the Commission had, instead, required sponsorship letters to be filed in its New Jersey offices, those written instruments would be subject to the provisions of New Jersey equivalent statute for offering a false instrument for filing, codified at N.J.S.A.2C:21-3(b).

(WCNYH 36, fn 15)  The NYSA-ILA completely ignore the fact that they are subject to a false filing statute regardless of where the instrument is filed.

Plaintiffs rely on *People v. Sutera*, 968 N.Y.S.2d 442, 443 (N.Y. App. Div. 2013), which stands for the proposition that the Commission is not a public authority, and contend that the false filing statute does not apply to submissions to the Commission.  (NYSA-ILA 35)  A review of the language of the statute renders this argument without basis.  It applies to instruments presented to "a public office, public servant, public authority, or public benefit corporation," with the intent to defraud "the state or any political subdivision, public authority, or public benefit corporation."  As noted by the court in *People v. Sutera*, *supra*, " . . . the Waterfront Commission, created by New York and New Jersey with Congressional consent for the purpose of fighting criminal activity and promoting fair hiring practice on the waterfront, is a relatively conventional 'part of the government of each of the states.'" *Id.* (*quoting State v. Murphy*, 36 N.J. 172, 186 (1961))[20]  Regardless of

---

[20] *Sutera* was unrelated to the false filing statute; the issue there was whether the Commission was within the jurisdiction of the NYS Inspector General.  *Id.*  Notably, the court observed that one of the purposes for which the Commission was created was to promote fair hiring practices on the waterfront.  This just further supports a dismissal of Count I, as argued above.

whether the Commission is a public authority, this language places it squarely within the false filing statute's first category, which is the state or any political subdivision.  Plaintiffs would be hard-pressed to argue otherwise before any tribunal.  In any event, this issue need not be resolved here but rather, in an action brought by the appropriate law enforcement agency seeking to enforce this statute.  Plaintiffs have failed to state a claim and Count IX should thus be dismissed.

## IX.  COUNT X – PLAINTIFFS HAVE FAILED TO SHOW A VIOLATION OF DUE PROCESS RIGHTS

To state a procedural due process claim, Plaintiffs must allege that (1) they have been deprived of some liberty interest or property interest, and (2) the procedure accompanying the deprivation did not satisfy the requirements for procedural due process.  *See, e.g., Midnight Sessions Ltd. v. Philadelphia*, 945 F.2d 667 (3rd Cir. 1991)[21]  This has not been shown here.  Plaintiffs have not cogently pled that the certification requirement at issue encroaches on any property interest or right.  Their general allegation that they have been "deprived of their right to rely on their collective bargaining agreements" does not clear that hurdle.  (MMMCA 37)  Moreover, Plaintiffs' claims of inadequate notice are directly belied by the allegations in the Amended Complaint.

Plaintiffs repeatedly refer to a "Secret Determination," which was "made in private and with no notice to employers, or any interested party."  (MMMCA 8)  They argue that the Commission informed them of the resolution at issue a month after its passage, and contend that the Commission had never previously notified any of the Plaintiffs that it was considering such action.  (NYSA-ILA 9)  However, it is undisputed that on August 26, 2013, the Commission provided the NYSA with notice of the pending amendment, as well as the proposed text, and invited it to submit comments and to appear at a public Commission meeting at which the amendment was being considered.  (AC

---

[21]  Plaintiffs do not deny that the Administrative Procedures Act is inapplicable.  Nor do they cite any controlling authority that requires the Commission to hold a public hearing before it exercises its rule-making authority.  Instead, the NYSA-ILA string cite several inapposite cases in which due process violations were found because individuals who were entitled to hearings pursuant to collective bargaining agreements were terminated without a hearing.  They are not instructive.

¶40; WCNYH Mot. to Dismiss Ex. H [ECF 44-7])  The proposed amendment was made available for public for review on the Commission's website.  (Am. Compl. - Ex. 5 at 2)  The MMMCA was informed of the pending rule by the NYSA.  (AC ¶43)  The NYSA declined to attend but submitted comments on September 6, 2013 in opposition to the certification.  (AC ¶41)  After reviewing written opposition by the NYSA (which was almost identical as the MMMCA), the Commission adopted the resolution at its September 9, 2013 meeting.  (AC ¶44, WCNYH Mot. to Dismiss Ex. H [ECF 44-7])  Any determination that was made in connection with the resolution at issue was made at that meeting, upon notice to Plaintiffs and to the public.  By Plaintiffs' own allegations, they were given adequate notice.  Count X fails to state a valid claim and must therefore be dismissed.

### CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiffs' Amended Complaint for failure to state a claim should be granted.

Respectfully submitted,

Waterfront Commission of New York Harbor

By:___*/s/ Phoebe S. Sorial*_____
Phoebe S. Sorial, General Counsel
39 Broadway, 4th Floor
New York, New York 10006
Telephone (212) 905-9202
Facsimile (212) 480-0587
psorial@wcnyh.gov

Dated:          February 28, 2014

### CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2014, I served the foregoing Reply Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiffs' Complaint for failure to state a claim upon counsel of record *via* the ECF filing system.

/s/  Phoebe S. Sorial
_____
Phoebe S. Sorial, General Counsel
Waterfront Commission of New York Harbor
39 Broadway, 4th Floor
New York, New York 10006
Telephone (212) 905-9202
Facsimile (212) 480-0587
psorial@wcnyh.gov