**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW YORK SHIPPING ASSOCIATION, INC., on behalf of its members; METROPOLITAN MARINE MAINTENANCE CONTRACTORS' ASSOCIATION, INC., on behalf of its members; INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO, on behalf of its members and affiliated locals in the Port of New York and New Jersey; LOCAL 1804-1, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO, on behalf of its members; AND LOCAL 1814, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO, on behalf of its members, <br><br> Plaintiffs, <br><br> v. <br><br> WATEFRONT COMMISSION OF NEW YORK HARBOR, <br><br> Defendant. | Civil Action No. 2:13-7115 (SDW) (MCA) <br><br> **OPINION** <br><br> **August 27, 2014** |

**WIGENTON**, District Judge.

Before this Court is Defendant Waterfront Commission of New York Harbor's (the "Commission") Motion to Dismiss the Amended Complaint (dkt. no. 43) filed Plaintiffs New York Shipping Association, Inc.; Metropolitan Marine Maintenance Contractors' Association, Inc.; International Longshoremen's Association, AFL-CIO; Local 1804-1, International Longshoremen's Association, AFL-CIO; and Local 1814, International Longshoremen's Association, AFL-CIO (collectively, "Plaintiffs"). Also before this Court are Metropolitan

Marine Maintenance Contractors' Association, Inc.'s Motion to Strike Portions of Defendant's

Memorandum of Law In Support of Its Motion to Dismiss and the Declaration of Phoebe S. Sorial,

Esq., In Support of Same (dkt no. 53) and the Commission's Motion for Sanctions for the Failure

to Dismiss Count VI of the Amended Complaint (dkt. no. 55).  This Court has jurisdiction pursuant

to 28 U.S.C. § 1331.  This matter is properly venued before this Court under 28 U.S.C. § 1391(b)

and 28 U.S.C. § 2201.  For the reasons stated herein, the Commission's Motion to Dismiss the

Amended Complaint is **GRANTED**.  Metropolitan Marine Maintenance Contractors' Association,

Inc.' Motion to Strike is **DENIED**, and the Commission's Motion for Sanctions is **DENIED** as

moot.

## I.      BACKGROUND

The gravamen of the Amended Complaint is Plaintiffs' allegations that the Commission

has unlawfully amended a rule governing the hiring of "A" register longshoremen and issued a

determination that imposes hiring procedures that are contrary to the governing statute.  (Am.

Compl. 2-3.)  The Commission is a bi-state instrumentality that was created in 1953 via passage

of the Waterfront Commission Compact (the "Compact"), which stemmed from the legislatures of

New York and New Jersey promulgating identical statutes.  *N.J.S.A.* § 32:23-1, *et seq.*; N.Y.

Unconsol. Laws § 9801 *et seq.* (McKinney).  Congress consented to the Compact on August 13,

1953, as required by the Article I, § 10 of the United States Constitution.  Pub. L. No. 83-252, 67

Stat. 541 (1953).  The Compact was passed in an effort to eradicate sundry evils in the Port of New

York district.  *De Veau v. Braisted*, 363 U.S. 144, 147-50 (1960).  The Compact's passage was

precipitated by investigations of various government agencies that found pervasive criminal

activity and widespread corruption in the Port of New York district.  *Id*.; *Nat'l Org. for Women,*

*N.Y. Chapter v. Waterfront Comm'n of N.Y. Harbor*, 468 F. Supp. 317, 318 (S.D.N.Y. 1979).  In

passing the Compact, the legislatures of New York and New Jersey declared

> that the conditions under which waterfront labor is employed within
> the Port of New York district are depressing and degrading to such
> labor, resulting from the lack of any systematic method of hiring,
> the lack of adequate information as to the availability of
> employment, corrupt hiring practices and the fact that persons
> conducting such hiring are frequently criminals and persons
> notoriously lacking in moral character and integrity and neither
> responsive or responsible to the employers nor to the uncoerced will
> of the majority of the members of the labor organizations of the
> employees; that as a result waterfront laborers suffer from
> irregularity of employment, fear and insecurity, inadequate
> earnings, an unduly high accident rate, subjection to borrowing at
> usurious rates of interest, exploitation and extortion as the price of
> securing employment.

*N.J.S.A.* § 32:23-2.

The Commission was thus created and vested with an array of tools to combat the

waterfront's corruption.  *N.J.S.A.* § 32:23-10.  One of the Commission's primary duties is to

maintain the longshoremen's register, a list of all individuals qualified to work as longshoremen.

*N.J.S.A.* § 32:23-27.  Under the Compact, no person could work as a longshoreman within the Port

of New York district unless his name was on the longshoremen's register, and no person could

employ someone to work as a longshoreman in the district unless that worker was registered.  *Id.*

Longshoreman was originally defined as follows:

> [A] natural person, other than a hiring agent, who is employed for
> work at a pier or other waterfront terminal, either by a carrier of
> freight by water or by a stevedore (a) physically to move waterborne
> freight on vessels berthed at piers, on piers or at other waterfront
> terminals, or (b) to engage in direct and immediate checking of any
> such freight or of the custodial accounting therefor or in the
> recording or tabulation of the hours worked at piers or other
> waterfront terminals by natural persons employed by carriers of
> freight by water or stevedores, or (c) to supervise directly and
> immediately others who are employed as in subdivision (a) of this
> definition.

*N.J.S.A.* § 32:23-6.  Shortly after the Compact's passage, it became apparent that loopholes in the definition allowed certain criminals to escape the licensing requirements, so the legislatures of New York and New Jersey in 1956 and 1957, respectively, expanded the definition to also include "individuals who performed services incidental to the movement of waterborne freight." *Waterfront Comm'n of N.Y. Harbor v. Mercedes-Benz of North Am., Inc.*, 99 N.J. 402, 411 (1985). These longshoremen are colloquially referred to as "deep-sea longshoremen." *See Bozzi v. Waterfront Comm'n of N.Y. Harbor*, 90 Civ. 0926, 1994 U.S. Dist. LEXIS 15664, at *4-5 (S.D.N.Y. Nov. 3, 1994).  The Compact also empowered the Commission to issue licenses to stevedoring companies that sought to operate in the Port of New York district. *N.J.S.A.* § 32:23-19.  A "stevedore" was originally defined to mean a contractor engaged by a carrier of freight by water to move waterborne freight on ships berthed at piers, on piers, or at other waterfront terminals. *N.J.S.A.* § 32:23-6.  "Stevedores who employ deep-sea longshoremen, as defined above, are known as 'general' stevedores." *Bozzi*, 90 Civ. 0926, 1994 U.S. Dist. LEXIS 15664, at *6.

A technological advancement known as "containerization" led to further amendments of the Compact in 1969.  *Mercedes-Benz*, 99 N.J. at 411-13.  "Containerization involves the loading of cargo by a shipper into a box-like object called a container.  The cargo-laden container is loaded onto a truck frame that transports it to a pier where it is hoisted aboard a ship designed to carry containers.  At the port of discharge, the process is simply reversed." *Id*. at 411-12.  As a result, containers were loaded with cargo in warehouses and consolidation depots away from the docks and piers—and outside of the Commission's jurisdiction.  *Id*. at 412.  Thus, "individuals whom the Commission had removed from pier employment because of misconduct were able to return to the waterfront as warehouse employees and work in proximity to the registered longshoremen on the same cargo." *Id*.

The 1969 amendments expanded the definition of longshoreman to also include "a natural person . . . who is employed for work at a pier or other waterfront terminal . . . by any person to perform labor or services involving, or incidental to, the movement of freight at a waterfront terminal." *N.J.S.A.* § 32:23-85.  This eliminated the requirement that a worker be employed by a carrier of freight by water or by a stevedore to be considered a longshoreman.  "The 1969 amendments [also] expanded the definition of a stevedore to include contractors that were involved in the loading and unloading of containers, cargo storage, cargo repairing, coopering, general maintenance, carpentry, mechanical and miscellaneous work."  *Bozzi*, 90 Civ. 0926, 1994 U.S. Dist. LEXIS 15664, at *7.  Longshoremen registered pursuant to the 1969 amendments are assigned multi-digit registration numbers prefaced by an "A."  *Id*. at *9.  These longshoremen are known as "A registrants," distinguished from "deep-sea longshoremen" defined above.  *Id*.

Containerization also led to the adoption in 1966 of an amendment to the Compact known as Section 5-p.  *Nat'l Org. for Women, N.Y. Chapter*, 468 F. Supp. at 319.  Section 5-p closed the longshoremen's register and empowered the Commission to open it "after evaluating the desirability of an increase in the size of the waterfront work force."  *Id*.

The next major amendment to the Compact came in 1999 when Section 5-p was amended. In relevant part, Section 5-p states as follows:

> Upon the granting of any joint recommendation or petition under this section for the acceptance of applications for inclusion in the longshoremen's register, the commission shall accept applications upon written sponsorship from the prospective employer of longshoremen.  The sponsoring employer shall furnish the commission with the name, address and such other identifying or category information as the commission may prescribe for any person so sponsored. The sponsoring employer shall certify that the selection of the persons so sponsored was made on a fair and non-discriminatory basis in accordance with the requirements of the laws of the United States and the states of New York and New Jersey dealing with equal employment opportunities.

5

> Notwithstanding the foregoing, where the commission determines
> to accept applications for inclusion in the longshoremen's register
> on its own initiative, such acceptance shall be accomplished in such
> a manner deemed appropriate by the commission.

*N.J.S.A.* § 32:23-114(1)(4).  Plaintiffs allege that the Commission's recent actions violate this and

other provisions of the Compact.

## II.     FACTUAL AND PROCEDURAL HISTORY

### A.     The Amended Complaint's Allegations

#### 1.     The Parties

Plaintiff New York Shipping Association, Inc. ("NYSA") is a not-for-profit, incorporated

membership organization of marine terminal operators, stevedore companies, and ocean carriers

that conduct business in the New York Harbor district.  (Am. Compl. ¶ 4.)  NYSA negotiates and

administers collective bargaining agreements on behalf of its members, who employ

approximately 3,500 of the approximately 6,000 workers registered with the Commission.  (Am.

Compl. ¶ 4.)   Plaintiff Metropolitan Marine Maintenance Contractors' Association, Inc.

("MMMCA") is a not-for-profit association of maintenance-marine contractor employers that

administers collective bargaining agreements on behalf of its members, who employ

approximately 1,000 workers registered with the Commission.  (Am. Compl. ¶ 5.)  Plaintiff

International Longshoremen's Association, AFL-CIO ("ILA") is an unincorporated association

and labor organization that serves as the exclusive collective bargaining representative, certified

by the National Labor Relations Board, for all longshoremen and other waterfront employees

employed by NYSA's members.  (Am. Compl. ¶ 6.)  Plaintiffs Local 1804-1, International

Longshoremen's Association, AFL-CIO ("ILA Local 1804-1") and Local 1814, International

Longshoremen's Association, AFL-CIO ("ILA Local 1814") are unincorporated associations and

labor organizations that represent maintenance and repair ("M&R") workers who are employed by

NYSA's and MMMCA's members on the New Jersey and New York sides, respectively, of the Port of New York district.  (Am. Compl. ¶¶ 7, 8.)

> 2.      Underlying Facts

Plaintiffs allege that in 2013, NYSA and ILA agreed to a new six-year collective bargaining agreement.  (Am. Compl. ¶ 30.)  The collective bargaining agreement included a hiring plan in which 51% of new workers to be hired would consist of honorably discharged military veterans, 25% of new workers would be ILA referrals, and 24% would be referrals from NYSA and its members (the "Hiring Plan").  (Am. Compl. ¶ 31.)  It appears that the NYSA-ILA Contract Board (the "Contract Board") would be responsible for administering the Hiring Plan.  (Am. Compl. ¶¶ 31-33.)  The Contract Board sent a letter to the Commission dated September 9, 2013, beseeching the Commission to open the register on its own initiative to add 682 new employees to the longshoremen's register.  (Am. Compl. ¶ 32.)  On December 3, 2013, the Commission issued Determination 35, which, *inter alia*, states that the Commission would accept applications for 225 new positions.  Determination 35 also requires the following:

> Ordered, that prior to the Commission's acceptance of any application for inclusion in the Longshoremen's Register pursuant to this Determination, a representative of the NYSA-ILA Contract Board directly involved with the administration of the Hiring Plan shall submit a letter setting forth the name and address of the recommended individual, and certifying that: (1) he or she has personal knowledge of the facts concerning the recruitment, referral, selection and sponsorship of [the applicant] and (2) the selection of the person so sponsored was made in a fair and nondiscriminatory basis in accordance with the requirements of the laws of the United States and the States of New York and New Jersey dealing with equal employment opportunities.

(Am. Compl. ¶ 34; Ex. 3 to Am. Compl. DETERMINATION 35 (Dec. 3, 2013).)  Prior to the issuance of Determination 35, NYSA had submitted sponsorship letters from its members with the sponsoring employers' certifications, pursuant to Section 5-p.  (Am. Compl. ¶ 35.)  After issuing

Determination 35, the Commission rejected the certifications as non-compliant with Determination 35.  (Am. Compl. ¶ 35.)

Further, Plaintiffs allege that NYSA's stevedore-company members created separate maintenance-contractor subsidiaries to employ "A" registrants for the completion of M&R work because the Commission had a policy of not permitting NYSA's members to hire "A" registrants. (Am. Compl. ¶ 36.)   These subsidiaries became MMMCA members and are parties to the MMMCA-ILA collective bargaining agreement ("MMMCA-ILA CBA").  (Am. Compl. ¶ 36.) The MMMCA-ILA CBA establishes the terms and conditions for employment of all M&R employees and lashers in the Port of New York district, and for decades has provided that the union is the exclusive source of new referrals.  (Am. Compl. ¶ 37.)  Plaintiffs go on to allege that the Commission advised NYSA that it would permit its members to hire new "A" registrants.  (Am. Compl. ¶ 38.)  Thus on July 23, 2013, the NYSA-ILA CBA was amended to adopt virtually the same hiring procedure used for "A" registrants detailed in the MMMCA-ILA CBA.  (Am. Compl. ¶ 39.)  The aforementioned provision states as follows:

> With respect to new employees, the Employer shall notify the Union of the number and classifications of employees required. It shall be the responsibility of the Union to furnish the necessary employees requested by the Employer. The Employer shall have the right to determine the competency and qualifications of the employees referred. In the event that the Union is unable to supply qualified employees within thirty (30) days, then the Employer may secure the employees from any available source provided they abide by the Union Security Clause and Checkoff provisions set forth in Article II, section 3 of this Agreement.

(Am. Compl. ¶ 39.)  On August 26, 2013, the Commission sent the NYSA an e-mail advising it that the Commission was considering an amendment to Section 4.4(d) of the Commission's Rules and Regulations ("Rule 4.4(d)") and included, as an attachment to the e-mail, the proposed amendment:

> The sponsoring employer shall submit a letter setting forth the name
> and address of the person, and the labor service(s) to be performed,
> and shall certify that the selection of the persons so sponsored was
> made in a fair and nondiscriminatory basis in accordance with the
> requirements of the laws of the United States and the States of New
> York and New Jersey dealing with equal employment opportunities.

(Am. Compl. ¶ 40.)  By letter dated September 6, 2013, NYSA, through counsel, submitted comments to the Commission expressing its concerns about the proposed amendment to Rule 4.4(d).  (Am. Compl. ¶ 41.)  NYSA also suggested an alternative to the proposed amendment, which would have required the sponsoring employer to "certify that to the extent of its involvement, the hiring of the employee was fair and nondiscriminatory."  (Am. Compl. ¶ 42.)

Plaintiffs allege that the Commission did not notify MMMCA about the proposed amendment to Rule 4.4(d), but that MMMCA only learned of it from NYSA.  (Am. Compl. ¶ 43.)  Nevertheless, on September 9, 2013, MMMCA submitted comments to the Commission, which were substantially the same as NYSA's comments.  (Am. Compl. ¶ 43.)  The Commission adopted its proposed amendment to Rule 4.4(d) without any changes on September 9, 2013.  (Am. Compl. 44.)  Accordingly, Plaintiffs allege that the Commission informed employers that they could not hire "A" registrants unless they provide a certification that does not deviate from the language of the amended Rule 4.4(d).  (Am. Compl. ¶ 45.)

Moreover, Plaintiffs allege that by letter dated October 16, 2013, the Commission informed NYSA and ILA of two resolutions.  The first resolution, dated October 8, 2013 (the "October Determination"), states that the Commission had determined that the contract provisions in both the NYSA-ILA CBA and the MMMCA-ILA CBA relating to the hiring procedures of "A" registrants promote the various conditions the Compact was intended to eradicate.  (Am. Compl. ¶ 46.)  Although the Amended Complaint is ambiguous on this point, it appears that the second

resolution was the Commission's resolution dated September 9, 2013 adopting the amendment to Rule 4.4(d).  (Am. Compl. ¶ 48.)

### B.     Procedural History

Plaintiffs initially filed the Complaint on November 22, 2013.  (Dkt. No. 1.)  Plaintiffs thereafter petitioned this Court in December 2013, by an order to show cause, for, *inter alia*, a restraining order precluding the Commission from enforcing the amended Rule 4.4(d).  (Dkt. Nos. 17, 20.)  On the petition's return date, December 19, 2013, this Court heard oral argument and denied Plaintiffs' application.  (Dkt. No. 33.)  Plaintiffs thereafter filed a thirty-one page, ten count Amended Complaint on January 6, 2014.  (Dkt. No. 38.)  The Commission moved to dismiss the Amended Complaint shortly thereafter arguing that the allegations contained therein failed to state causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 43.)  Opposition was filed jointly by NYSA, ILA, ILA Local 1804-1, and ILA Local 1814 (the "NYSA-ILA Plaintiffs' Opposition Brief").  (Dkt. No. 58.)  Separate opposition was filed by MMMCA (the "MMMCA Opposition Brief").  (Dkt. No. 52.)  On February 21, 2014, MMMCA moved to strike certain portions of the Commission's moving brief and supporting affidavit.  (Dkt. No. 54.)  Also on February 21, the Commission filed a motion for sanctions for the Plaintiffs' failure to have dismissed Count VI; the parties stipulated to Count VI's dismissal the same day.[1]  (Dkt. Nos. 51, 55.)  Finally, after all briefing on these motions had concluded, the parties advised this Court that the Commission had adopted certain resolutions amending Determination 35; however, the parties stipulated that there was no need to file additional, supplemental, or amended papers in support of or opposition to the pending motions.  (Dkt. No. 75.)

---

[1] Accordingly, the Commission's Motion for Sanctions is denied as moot.

### III.    LEGAL STANDARD

The adequacy of pleadings is governed by Federal Rule of Civil Procedure 8(a), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  This rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief") (citation omitted).

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief" as required by Rule 8(a)(2).  *Id.* at 679.

According to the Supreme Court in *Twombly*, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his[/her] 'entitle[ment] to relief' requires more than labels and

conclusions." 550 U.S. at 555 (internal citations omitted). The Third Circuit summarized the *Twombly* pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

The Third Circuit recently directed district courts to conduct a two-part analysis in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court must separate the factual elements from the legal conclusions. *See id.* The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11 (citing *Iqbal*, 556 U.S. at 678). Second, the court must determine if "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 566 U.S. at 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id.* (citing *Phillips*, 515 F.3d at 234-35).

Finally, as a general rule, a district court deciding a motion to dismiss may consider only the contents of the pleadings. *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). There exists an exception to this general rule, however, in that "'[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim.'" *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 253 n.3 (3d Cir. 2010) (quoting *Pryor*, 288 F.3d at 560 (emphasis omitted)). Moreover, a court may examine documents attached to the complaint, and may also consider documents in the public record. *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 425-27 (3d Cir. 1999); *Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998).

## IV.    DISCUSSION

### A.    Counts I & II

In Count I, Plaintiffs allege that the statute the Commission relies upon in amending Rule 4.4(d), the certification provision of Section 5-p, lacks Congressional consent and is therefore unconstitutional.  (Am. Compl. ¶ 58.)  Accordingly, Plaintiffs allege that since the statutory authority is unconstitutional, it follows that Rule 4.4(d) is also unconstitutional.  (*Id.*)  Consequently, Plaintiffs conclude that they are entitled to injunctive relief precluding the Commission from continuing to enforce Section 5-p's certification provision and the amendment to Rule 4.4(d), and a declaration finding that both are void.  (Am. Compl. ¶ 59.)  Similarly, in Count II, Plaintiffs allege that the amendment to Rule 4.4(d) lacks statutory authority because the basis for it is derived from Section 5-p, which, Plaintiffs allege, was not meant to apply to "A" registrants.  (Am. Compl. ¶ 65.)

New York and New Jersey entered into the Compact with Congress's approval to combat various "evils" affecting labor in the Port of New York district.  *Waterfront Comm'n of N.Y. Harbor v. Constr. & Marine Equip. Co., Inc.*, 928 F. Supp. 1388, 1392 (D.N.J.), *aff'd*, 105 F.3d 115 (3d Cir. 1996).  The Commission was thus created to eliminate these evils and was empowered to implement regulations it deemed necessary "to effectuate the purposes of [the Compact] or to prevent the circumvention or evasion thereof."  *N.J.S.A.* § 32:23-10.  Congress anticipated the two states would amend the Compact and specifically authorized such amendments as long as they "implement the purposes" of the Compact.  *N.J.S.A.* § 32:23-70; *Constr. & Marine Equip. Co., Inc.*, 928 F. Supp. at 1392.  The elimination of "corrupt hiring practices," including the purposeful exclusion of racial and ethnic minorities and women, is certainly encompassed within the Compact's purposes.  Numerous federal and state courts of both New York and New Jersey, to be

13

sure, have reached this conclusion.  *See, e.g.*, *Nat'l Org. of Women v. Waterfront Comm'n of N.Y. Habor*, 486 F. Supp. 317, 319 (S.D.N.Y. 1979) ("We are advised by the Commission that it has used its authority over hiring agents to deny licenses to any who discriminated in employment on grounds of color, race, creed or sex.");  *N.Y. Shipping Assoc., Inc., v. Waterfront Comm'n of N.Y. Harbor*, Civ. Action No. 78-995 (D.N.J. June 1, 1978), *aff'd*, 582 F.2d 1275 (3d Cir. 1978) (the Commission is empowered to control the size and character of the waterfront workforce); *Cernadas v. Waterfront Comm'n of N.Y. Harbor*, Index No. 22405/80, at *3-4 (N.Y. Sup. Ct. Sp. Term Jan. 5, 1981).

Here, Plaintiffs' allegation that the certification provision of Section 5-p is unconstitutional because it does not effectuate the purposes of the Compact is contrary to well-settled law.  This issue, albeit in a different context, was squarely addressed in *Cernadas*.  There, plaintiff moved to quash a subpoena the Commission had issued during the course of its investigation into possible racial discrimination in the hiring of longshoremen.  *Id*. at *1.  The court determined that in furtherance of the Compact's purposes, it was "necessary that the Commission conduct[] an investigation to determine whether racial discrimination has played any part in the hiring of longshoremen.  Upon a finding that in fact racial quotas have been employed in determining which longshoremen are hired, it could, if it be so advised, revoke, suspend or reprimand the license of one or more persons governed by it."  *Id*. at *3-4.  Therefore, the court required plaintiff to respond to the subpoena to the extent the Commission sought plaintiff's "testimony concerning racial discrimination and racial quotas as a basis for hiring longshoremen within the Port of New York district."  *Id*. at *4-5.

In addition to long-standing law, many of the litigants here have taken the position in the past that the Commission's mission includes the eradication of discriminatory hiring practices

based on race and gender.  In a 1978 affidavit in opposition to a preliminary injunction application, the Commission's then executive director unequivocally informed the Southern District of New York about the Commission's commitment to fair employment practices and its efforts to combat discrimination and ensure a diverse workforce.  (*See* Dkt. No. 62, Def.'s Ex. A, Aff. of Leonard Newman, ¶¶ 22-24 (Sept. 19, 1978).)  The affidavit concluded with the executive director advising that "[t]he Commission, as always, will continue to be vigilant against discrimination in waterfront employment."  (*Id*. ¶ 28.)  Accordingly, combating discriminatory hiring practices and striving for a diverse workforce in the Port of New York district are deeply rooted in the Compact's purposes and Commission's authority.

As for Plaintiffs, while the 1999 amendment to Section 5-p was under consideration—the very same statute Plaintiffs now allege is unconstitutional—the NYSA authored a letter to the then governor of New York in which it unreservedly supported the pending bill and lauded the bill's promise of guaranteeing the employment of a large number of minorities.  (*See* Dkt. No. 44, Def.'s Ex. C, Letter from James A. Capo to Gov. Georg Pataki (June 28, 1999).)  The letter espoused the importance of increasing the number of minorities in waterfront labor, endorsing the legislation because it would make "sure that future additions to the workforce contain a number of women, Blacks and Hispanics."  (*Id*.)  It continued that "[t]he amendatory language differs from the process required by the current law[,]. . . which obviously does not result in a guarantee that any members of the aforementioned groups would be added to the workforce on a permanent basis."  In the letter, the NYSA fully supported the subject certification provision, trumpeting its belief that the certification provision was "more than adequate to assure that the person sponsored will include a number of women, Blacks and Hispanics."  (*Id*.)  The letter concludes as follows: "NYSA and ILA wish to assure you that the industry is committed to further increase the representation of minority

groups within its workforce." (*Id.*)  The NYSA-ILA Plaintiffs' reversal of their recent position is puzzling.

In sum, Count I fails to state a claim as a matter of law because the eradication of racial and gender-based discrimination is a purpose of the Compact.  Section 5-p's certification provision furthers this purpose and is thus constitutional.

As for Count II, Plaintiffs' allegation that the amendment to Rule 4.4(d) is unconstitutional because the certification provision of Section 5-p does not apply to "A" registrants fails to state a cause of action.  (Am. Compl. ¶ 65.)  Plaintiffs' cite to *Bozzi v. Waterfront Comm'n of N.Y. Harbor*, 90 Civ. 0926, 1994 U.S. Dist. LEXIS 15664 (S.D.N.Y. Nov. 3, 1994), in arguing that "the Commission has consistently maintained the position that section 5-p does not apply to 'A' registrants."  (Am. Compl. ¶ 64.)  *Bozzi* does not offer Plaintiffs the support they seek.  In that case, the Commission, in response to two men who sought inclusion in the closed register as unrestricted deep-sea longshoremen, clarified its interpretation of the statute, reiterating its long-standing practice of exempting "A" registrants from the closed register provisions of Section 5-p. *Bozzi*, 1994 U.S. Dist. LEXIS 15664, at *28-29.  Stated differently, *Bozzi* simply stands for the proposition that "A" registrants are not subject to the closed register provisions of Section 5-p but are subject to the other applicable provisions, such as the certification provisions.  The Commission has interpreted Section 5-p in this manner for decades.  It is well-settled that an agency's interpretation of a statute it is tasked with enforcing is entitled to great weight, especially when that interpretation "has been applied consistently by that agency for a long period."  *Id.* at *21; *see also Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) ("We have long recognized that considerable weight should be accorded to an [agency's] construction of a statutory scheme it is entrusted to administer.");  *Waterfront Comm'n of N.Y.*

*Harbor v. Constr. & Marine Equip. Co., Inc.*, 928 F. Supp. 1388, 1400 (D.N.J. 1996) ("[C]ourts generally place considerable weight on the construction of a statute given by the agency charged with enforcing it . . . ."). Therefore, as a matter of law, Count II fails to state a cause of action.

## B.   Counts III, IV, and VII

Counts III, IV, VII all relate to Plaintiffs' contention that the Commission is unlawfully interfering with Plaintiffs' collective bargaining rights by the Commission's implementation of the amendment to Rule 4.4(d) and/or Determination 35.  Specifically, Count III alleges that "[t]he effect of the Commission's interpretation of the certification requirement in the amendment to Rule 4.4(d) would be to interfere with the right to bargain collectively established by the Compact and other federal statutory law."  (Am. Compl. ¶ 73.)  In Count IV, Plaintiffs state that "[t]he Commission's application of the amendment to Rule 4.4(d) requires the members of Plaintiffs NYSA and MMMCA to eschew the union-referral systems of their labor contracts in order to employ 'A' registrants."  (Am. Compl. ¶ 78.)  Last, Count VII alleges that "[t]he provisions in Determination 35 dealing with interpretation, application, and implementation of the collectively-bargained Hiring Plan, the assignment of seniority, and the formulation of hiring rights and priorities are matters of collective bargaining, which Article XV of the Compact prohibits the Commission from limiting in any way."  (Am. Compl. ¶ 99.)  In support of these three counts, Plaintiffs cite to Article XV of the Compact, which generally safeguards the collective bargaining rights of labor.  *N.J.S.A.* § 32:23-68, -69.

Plaintiffs seek an injunction precluding the Commission from implementing the amendment to Rule 4.4(d) as violative of Article XV.  Article XV of the Compact states as follows:

> This compact is not designed and shall not be construed to limit in any way any rights granted or derived from any other statute or any rule of law for employees to organize in labor organizations, to bargain collectively and to act in any other way individually, collectively, and through labor organizations or other

representatives of their own choosing. Without limiting the generality of the foregoing, nothing contained in this compact shall be construed to limit in any way the right of employees to strike.

This compact is not designed and shall not be construed to limit in any way any rights of longshoremen, hiring agents, pier superintendents or port watchmen or their employers to bargain collectively and agree upon any method for the selection of such employees by way of seniority, experience, regular gangs or otherwise; provided, that such employees shall be licensed or registered hereunder and such longshoremen and port watchmen shall be hired only through the employment information centers established hereunder and that all other provisions of this compact be observed.

*N.J.S.A.* § 32:23-68, -69.  While the Compact undoubtedly safeguards collectively bargained rights, the protections are not absolute.  Indeed, the very last phrase of Article XV requires that any collectively bargained rights be in accordance with the Compact.  In discussing Article XV's protections, the Third Circuit noted that "it guarantees that [collectively bargained] hiring procedures will not be displaced where they comport with the Compact." *Waterfront Comm'n of N.Y. Harbor v. Sea Land Serv., Inc.*, 764 F.2d 961, 963 (3d Cir. 1985).  As such, the Third Circuit confirmed that any collectively bargained rights cannot supersede "the Commission's supervisory role regarding practices that might lead to corruption." *Id.* at 966-67.

In *N.Y. Shipping Assoc., Inc., v. Waterfront Comm'n of N.Y. Harbor*, Civ. Action No. 78-995 (D.N.J. June 1, 1978), *aff'd*, 582 F.2d 1275 (3d Cir. 1978), the district court, in ruling on Commission action that deviated from the collectively bargained solution advanced by the plaintiffs to address a labor shortage, acknowledged that Congress had already authorized the impairment of collectively bargained rights by its promulgation of the Compact.  *Id.* at *11.  The court reasoned "[i]nasmuch as the Commission was granted total control over the expansion or reduction of the work force, the Commission's authority already, 'infringes' upon collective bargaining functions normally reserved only to employers and unions."  *Id.*  The court continued

that "Congress specifically sanctioned the Waterfront Act, with full knowledge and intention that its specific provisions would override the general policies of federal labor rights if the two came in conflict." *Id.* at *12.  As such, the Court granted the Commission's summary judgment motion and rejected plaintiffs' argument that the Commission's actions were an unlawful infringement on their collectively bargained rights.

Similarly, to the extent that the amendment to Rule 4.4(d) conflicts with Plaintiffs' collectively bargained rights, the amendment is not contrary to the Act as it furthers the Act's purposes.  As Plaintiffs readily allege in the Amended Complaint, since the Commission does not have any jurisdiction over unions and Plaintiffs have entered into collective bargaining agreements that would only permit employers to hire workers referred from unions, the amendment to Rule 4.4(d) helps to ensure that the "evil hiring practices" the Act was intended to eradicate are, in fact, eradicated.  (*See* Am. Compl. ¶ 72.)  The collectively bargained union-referral process could circumvent the purposes of the Act by shifting the burden of non-discriminatory hiring practices from the employers to the unions, which are not subject to the Commission's regulation. Therefore, Counts III and IV, which allege that Plaintiffs are entitled to injunctive relief because the Commission has violated Article XV of the Act, fail to state causes of action because as alleged, the two counts do not plead facts from which a plausible inference could be made that the amendment to Rule 4.4(d) unlawfully interferes with their collectively bargained rights.

With respect to Count VII, the Amended Complaint contains four paragraphs.  The first paragraph simply incorporates by reference what Plaintiffs pled previously in the Amended Complaint.  (Am. Compl. ¶ 96.)  The second paragraph is a legal conclusion about Article XV's prohibitions, which the Court is not required to accept as true.  *See Bell Atl. Corp.*, 550 U.S. at

555.  In the third paragraph, Plaintiffs allege that Determination 35 violates Article XV of the Compact.  In bullet point format, the paragraph lists four orders from Determination 35:

- The Commission will for all new hires 'determine their appropriate referral source, and to ensure that the new hires are in accordance with the goals and percentages set forth in the Hiring Plan';

- Any individual temporarily included in the Deep-Sea Register, whether a longshoremen or a checker, 'shall be assigned V seniority';

- Any individual temporarily included in the Deep-Sea Register, whether as a longshoremen or a checker, 'may be offered employment opportunities' only after all previously registered longshoremen have been offered employment; and

- Any individual temporarily included in the Deep-Sea Register, whether as a longshoremen or a checker, shall not be eligible for permanent inclusion in the Deep-Sea Register until that employee is approved by the Commission for addition to and placement on an employer's Regular List.

(Am. Compl. ¶ 98.)  Finally in the fourth paragraph, Plaintiffs go on to allege that "[t]he provisions in Determination 35 dealing with interpretation, application, and implementation of the collectively bargained Hiring Plan, the assignment of seniority and the formulation of hiring rights and priorities are matters of collective bargaining," which, Plaintiffs allege, violate Article XV of the Compact.  (Am. Compl. ¶ 99.)  Importantly, Plaintiffs do not allege any specific relief.

Federal Rule of Civil Procedure 8 requires, *inter alia*, a plain statement of facts and "a demand for the relief sought."  FED. R. CIV. P. 8(a).  As explained *supra*, only counts that state a plausible claim for relief survive motions to dismiss.  *Iqbal*, 556 U.S. at 1949.  The facts must show that the pleader is entitled to relief as a result of defendant's unlawful action, not just "the mere possibility of misconduct."  *Id*.

As a threshold matter, it must be noted that in Count VII, Plaintiffs fail to allege what relief they are seeking.  Under the plain terms of Federal Rule of Civil Procedure 8(a), the motion to

dismiss Count VII could be granted.  But even if the "wherefore" clause at the end of the Amended Complaint, wherein Plaintiffs request judgment "[g]ranting the declaratory and injunctive relief requested in each of the Counts[,]" were read as applying to Count VII, the count still fails to state a plausible claim for relief.  Count VII of the Amended Complaint fails to plead facts sufficient to nudge their claims "across the line from conceivable to plausible." *Id.* at 1951.  With the exception of the contents of Determination 35, Count VII consists of almost exclusively legal conclusions. Plaintiffs fail to connect the dots with allegations of how the Commission's actions, in light of Determination 35's contents, violate Article XV. *See Iqbal*, 556 U.S. at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (internal citations omitted). Accordingly, Count VII fails to allege sufficient facts to adequately state a claim for relief.

### C.     Count V

In Count V of the Amended Complaint, Plaintiffs allege that the Commission is attempting to use the certification provision of Section 5-p "as a sword to deny registration to new applicants chosen in a manner the Commission believes violates the equal-employment-opportunity laws." (Am. Compl. ¶ 82.)  Plaintiffs allege that unspecified federal and state agencies are statutorily mandated to determine violations of equal-employment opportunity laws, which "have exclusive and primary jurisdiction to decide employment-discrimination charges."  (*Id.* ¶ 83.)  Plaintiffs maintain that the Commission is usurping the authority of unspecified federal and state agencies to determine violations of federal or state equal-employment opportunity laws and is consequently depriving NYSA and MMMCA members of their right to hire workers that they desperately need. (*Id.* ¶¶ 83-85.)

Plaintiffs' reliance on the primary jurisdiction doctrine is misplaced.  The primary jurisdiction doctrine is "concerned with promoting proper relationships between the courts and

administrative agencies charged with particular regulatory duties." *United States v. W. Pac. R. Co.*, 352 U.S. 59, 63 (1956). Primary jurisdiction applies to claims that are originally cognizable by a court, but resolution of the claim requires determination of issues which have been "placed within the special competence of an administrative body[,]" and "in such a case[,] the judicial process is suspended pending referral of such issues to the administrative body." *Raritan Baykeeper, d/b/a/ NY/NJ Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 691 (3d Cir. 2011) (quoting *W. Pac. R. Co.*, 352 U.S. at 63-64)). Under the doctrine, courts refer matters involving technical or intricate fact and policy issues to the administrative body that the legislature has created to address those issues. *See Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220, 223 (2d Cir. 1995).

As a threshold matter, it should be noted that while Plaintiffs generally allege that "[f]ederal and state governments have established agencies that are statutorily mandated to determine purported violations of the equal-employment-opportunity laws[,]" they fail to identify what those agencies are. (Am Compl. ¶ 83.) In any event, the allegations of the Amended Complaint do not raise any technical issue or issues of special competence that federal courts are not adequately equipped to address. Indeed, federal courts routinely adjudicate labor and employment issues. Furthermore, the Commission *is* the specialized body tasked with regulating employment practices in the Port of New York district. *See N.J.S.A.* § 32:23-1 *et seq.* It is the agency created by Congress and the legislatures of both New York and New Jersey tasked with ensuring that waterfront workers are not subjected to corrupt hiring practices.

The NYSA-ILA Plaintiffs misread *NAACP v. Fed. Power Comm'n*, 425 U.S. 662 (1976), the only case they rely upon in their Opposition Brief in arguing this point. (*See* NYSA-ILA's Br. 26-27.) The issue in *NAACP* was to what extent, if any, the Federal Power Commission ("FPC") could prohibit discriminatory employment practices allegedly committed by its regulatees in the

FPC's performance of its duties under the Federal Power Act and the Natural Gas Act. *See NAACP*, 425 U.S. at 663. The High Court determined that the principal purpose of the two Acts was to "encourage the orderly development of plentiful supplies of electricity and natural gas at reasonable rates." *Id*. at 669-70. The Court concluded that there was nothing in the two Acts or their legislative histories to indicate that Congress intended that the FPC eliminate employment discrimination. *Id*. at 670. Conversely, the Commission was specifically created to eradicate "evil" hiring practices in the Port of New York district. As such, Count V fails to state a cause of action under the primary jurisdiction doctrine, and it is therefore dismissed.

### D.    Count VIII

Plaintiffs allege in Count VIII that because the Commission issued Determination 35 on its own initiative, "[t]he Commission has no authority to require a certification from the Contract Board, since the statute [Section 5-p] specifically requires such certifications only when the Commission's determination is not on its own initiative but rather upon a joint recommendation or petition and since the statute authorizes certifications only when submitted by the sponsoring employers." (Am. Compl. ¶¶ 101-04.) Accordingly, the Plaintiffs maintain that the Commission is acting contrary to Section 5-p by requiring that the certification be made by a member of the Contract Board, as opposed to a sponsoring employer. (Am. Compl. ¶ 102.) Additionally, Count VIII alleges that the Commission cannot require that the certification be made by a member of the Contract Board as NYSA and ILA comprise the contract Board and the Commission does not possess jurisdiction over them. (Am. Comp. ¶ 105-06.)

In relevant part, Section 5-p states as follows:

> Upon the granting of any joint recommendation or petition under this section for the acceptance of applications for inclusion in the longshoremen's register, the commission shall accept applications upon written sponsorship from the prospective employer of

longshoremen. The sponsoring employer shall furnish the commission with the name, address and such other identifying or category information as the commission may prescribe for any person so sponsored. The sponsoring employer shall certify that the selection of the persons so sponsored was made on a fair and non-discriminatory basis in accordance with the requirements of the laws of the United States and the states of New York and New Jersey dealing with equal employment opportunities.

Notwithstanding the foregoing, where the commission determines to accept applications for inclusion in the longshoremen's register on its own initiative, such acceptance shall be accomplished in such a manner deemed appropriate by the commission.

*N.J.S.A.* § 32:23-114(1)(4). Accordingly, the Commission is empowered to set the terms of its acceptance of applications when the Commission opens the longshoremen's register on its own initiative. With respect to whether the register was opened on the Commission's own initiative, the Amended Complaint makes contradictory assertions, alleging both that the register was opened upon the joint recommendation of NYSA and ILA, (Am. Compl. ¶¶ 91, 93, 104), and that it was done on the Commission's own initiative (Am. Compl. ¶ 32.) These factual inconsistencies are resolved by a letter attached to the Amended Complaint in which the Contract Board, on behalf of NYSA and ILA, asked the Commission to open the longshoremen's register on its own initiative in order to obviate the need for the statutorily mandated public hearing. Specifically, the letter states as follows: "The International Longshoremen's Association, AFL-CIO ('ILA'), and New York Shipping Association, Inc. ('NYSA') request an opening of the Longshoremen's Register in the Port of New York and New Jersey ('PONY-NJ') by the Waterfront Commission on its own initiative pursuant to the § 5-p of the Waterfront Commission Act." (*See* Am. Compl. Exhibit 2.) As such, the NYSA-ILA Plaintiffs' argument before this Court that the Commission opened the longshoremen's register pursuant to their joint recommendation, (NYSA-ILA Br. 33-34), is, at best, disingenuous, and is belied by their own words. Thus, the Commission has the statutory

authority to open the register in any "such . . . manner deemed appropriate." *N.J.S.A.* § 32:23-114(1)(4).

Based on the Amended Complaint's allegations and exhibits thereto, the NYSA members (i.e., employers) and ILA members (i.e., labor) assigned their waterfront hiring duties to the NYSA-ILA Contract Board under the Hiring Plan. (Am. Compl. ¶¶ 31-32.) While the Commission may not have jurisdiction over the NYSA-ILA entities, it certainly has jurisdiction over their constituent members. The members of NYSA-ILA cannot circumvent their responsibilities under the Compact by simply assigning their rights to the bargaining associations. Whatever rights, duties, and oversight the members are subject to under the Compact still exist upon the assignment of those duties to their respective collective bargaining associations. To find otherwise could easily lead to the Compact's unfettered circumvention. Indeed, the Compact is to "be liberally construed to eliminate the evils described therein and to effectuate the purposes thereof." *N.J.S.A.* § 32:23-72. Accordingly, pursuant to Section 5-p, the Commission opened the longshoremen's register on its own initiative and it is therefore authorized to set the terms upon which to open the register. Thus, the Commission is well within its statutory authority to require a Contract Board member to execute the complained of certification. This comports with the Commission's power "[t]o make and enforce such rules and regulations as the commission may deem necessary to effectuate the purposes of this compact or to prevent the circumvention or evasion thereof." *N.J.S.A.* § 32:23-10. Therefore, the allegations in Count VIII fail to state a claim as a matter of law.

### E.    Count IX

Count IX of the Amended Complaint alleges that the Commission lacks the authority to impose a criminal penalty for the filing of a false sponsorship letter. (Am. Compl. ¶ 114.) This

count stems from a directive of Determination 35, which states as follows: "ORDERED, that such sponsorship letters shall be filed at the offices of the Waterfront Commission of New York Harbor, 39 Broadway, New York, New York 10006 and that the offering of a false sponsorship letter for filing shall be punishable under N.Y. Penal law § 175.35."  (Am. Compl. ¶ 109.)  Plaintiffs therefore seek a declaration that the Commission is prohibited from imposing a criminal penalty for the submission of a false sponsorship letter.  (Am. Compl. ¶ 115.)

New York Penal Law § 175.35 states as follows:

> A person is guilty of offering a false instrument for filing in the first degree when, knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision, public authority or public benefit corporation of the state, he offers or presents it to a public office, public servant, public authority or public benefit corporation with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become part of the records of such public office, public servant, public authority or public benefit corporation.

To the extent knowingly false written instruments filed with the Commission fall within the statute's purview, the filer would be subject to punishment under the statute.  Indeed, the Commission is "a body corporate and politic, an instrumentality of the States of New York and New Jersey." *N.J.S.A.* § 32:23-7; *see State v. Murphy*, 36 N.J. 172, 185 (1962) ("The Commission is the agent of each state and of both of them, and exercises a portion of the police power delegated by the states which created it. . . .") (citations omitted);  *People v. Sutera*, 968 N.Y.S.2d 442, 443 (App. Div. 1st Dep't 2013), *appeal denied*, 988 N.Y.S.2d 575 (2014) ("[T]he Waterfront Commission, created by New York and New Jersey with Congressional consent for the purpose of fighting criminal activity and promoting fair hiring practices on the waterfront, is a relatively conventional 'part of the government of each of the states. . . .'") (citation omitted); *see also People v. Scotti*, 649 N.Y.S.2d 55, 56-57 (App. Div. 3d Dep't 1996) (finding that defendant was subject to prosecution under Penal Law § 175.35 after filing false written instrument with private

26

corporation hired by the state to process claims because after being hired, the corporation became an agent of the state).  While the Commission lacks authority to prosecute the statute or impose the resulting criminal penalty itself, *N.J.S.A.* § 32:23-64, Determination 35 does not indicate that the Commission is asserting authority to do so.  Determination 35 specifies that a knowingly false filed sponsorship letter is punishable under the statute.  As such, the appropriate prosecuting authority retains responsibility for such prosecution.  In any event, regardless of whether Determination 35 includes the complained of language, sponsorship letters submitted to the Commission are subject to the statute's prohibition, provided that the statute is applicable to written instruments filed with the Commission.  Accordingly, Count IX fails to state a claim.

### F.    Count X

In Count X, Plaintiffs allege that the Commission failed to provide them with notice and failed to hold hearings prior to issuing the resolution amending Rule 4.4(d).  (Am. Compl. ¶¶ 119-20.)  Plaintiffs complain that this procedure violated their due process rights guaranteed by the Fifth and Fourteenth Amendments to the Constitution.[2]  (Am. Compl. ¶¶ 120-22.)

In order to state a procedural due process claim, the plaintiff must allege that 1) an actor acting under color of state law 2) deprived plaintiffs of their liberty or property interest and 3) that the procedure accompanying the deprivation failed to adhere to the procedural due process requirements.  *See Midnight Sessions, Ltd. v. Philadelphia*, 945 F.2d 667, 680 (3d Cir. 1999) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)).  It is well-settled, however, that "the protections of procedural due process do not extend to legislative actions."  *Rogin v. Bensalem*

---

[2] The NYSA-ILA Plaintiffs make clear in their brief that the allegations in Count X of the Amended Compliant are an attempt to state a procedural due process claim.  (NYSA-ILA Br. 35.)  Although MMMCA argues that Count X states a substantive due process claim, it is clear from a plain reading of the allegations that Count X does not.  (MMMCA Br. 38-41.)  *See Pace Res., Inc. v. Shrewsbury Twp.*, 808 F.2d 1023, 1035 ("Thus to state a [substantive due process] claim, [plaintiff's] complaint would have to allege facts that would support a finding of arbitrary or irrational legislative action by the Township.").

*Twp.*, 616 F.2d 680, 693 (3d Cir. 1980). Indeed, the Third Circuit recently reaffirmed the principle that legislative activity does not entitle an aggrieved litigant to the procedural due process safeguards. *Northeast Land Dev., LLC v. City of Scranton*, 946 F. Supp. 2d 376, 386 (M.D. Pa. 2013), *aff'd*, 561 Fed. App'x 135 (3d Cir. 2014). In the legislative immunity context, which has been extended to the procedural due process analysis, the Third Circuit determined that promulgations are considered legislative in nature when they are both substantively and procedurally legislative. *Northeast Land Dev.*, 561 Fed. App'x at *6 (citing *Acierno v. Cloutier*, 40 F.3d 597, 610 (3d Cir. 1994) (*en banc*)). "Substantive legislative action . . . involves either the enactment or amendment of legislation, such as policymaking or line-drawing decisions. The enforcement of already existing laws is not legislative action." *Northeast Land Dev.*, 561 Fed. App'x at *6. Procedural legislative action requires promulgation through established legislative procedures. *Cnty. Concrete Corp. v. Twp. of Roxbury*, 442 F.3d 159, 172-73 (3d Cir. 2006).

Based on the Amended Complaint's allegations, the Commission's issuance of the resolution adopting Rule 4.4(d) was legislative action. Substantively, the Amended Complaint alleges that the Commission's amendment to Rule 4.4(d) *enacted* the certification requirement of which Plaintiffs complain. This fits squarely within the "substantive legislative action" definition because, based on Plaintiffs' allegations, it involved the "enactment or amendment" of the Commission's rules. Procedurally, Plaintiffs have failed to allege that the resolution adopting the amendment to Rule 4.4(d) was promulgated in a manner contrary to the Commission's established practice of adopting resolutions. *See Cnty. Concrete Corp.*, 442 F.3d at 172-73 ("Appellants have not alleged that the Ordinance was enacted in a manner contrary to 'statutory procedures specified for such action,' either in their complaint or now on appeal.") (internal citation omitted)). In any event, the Amended Complaint specifically alleges that the Commission sent NYSA an e-mail

advising it that the Commission was contemplating amending Rule 4.4(d) and attached the text of the proposed amendment.  (Am. Compl. ¶ 117.)  Via letters dated September 6 and 9, 2013, NYSA and MMMCA, respectively, submitted comments to the Commission voicing their concerns about the proposed amendment.  (Am. Compl. ¶ 118.)  Accordingly, based on the Amended Complaint's allegations, the Commission provided Plaintiffs with notice of the proposed amendment and an opportunity to inform the Commission about their objections.  Therefore, Count X fails to state a claim as a matter of law.

### G.   MMMCA's Motion to Strike

MMMCA moves to strike numerous documents and attendant argument the Commission relies upon in arguing that the Amended Complaint should be dismissed.  (Dkt. No. 54.)  Of the various documents MMMCA argues that the Commission unlawfully relies upon, this Court has only considered one: a 1999 letter from NYSA President James Capo to the then governor of New York.  (*See* Dkt. No. 44, Def.'s Ex. C, Letter from James A. Capo to Gov. Georg Pataki (June 28, 1999).)  This letter was submitted to the New York governor while the 1999 amendment to Section 5-p was under consideration.  As such, this letter is part of Section 5-p's legislative history and is therefore appropriate to analyze and consider at the motion to dismiss stage.  *In re Perlin*, 497 F.3d 364, 374-75 (3d Cir. 2007).  Furthermore, Plaintiffs attached the letter, along with other documents in Section 5-p's legislative history, as an exhibit in support of its application for a temporary restraining order.  (Dkt. No. 17, Ex. 3 to Cert. of James Campbell (Dec. 11, 2013).)  Thus, this Court may take judicial notice of the letter.  *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 425-27 (3d Cir. 1999).

**IV.      CONCLUSION**

In conclusion, the Commission's Motion to Dismiss the Amended Complaint is granted

for failure to state claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Commission's

Motion for Sanctions is denied as moot, and MMMCA's Motion to Strike is denied.   An

appropriate Order accompanies this Opinion.


                                               s/  Susan D. Wigenton
                                              **Susan D. Wigenton, U.S.D.J.**

cc:      Madeline Cox Arleo, U.S.M.J.
         Parties